**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH McKENNA, | CASE NO. CV F 12-0849 LJO GSA |
| Plaintiff, | **ORDER ON UNION'S F.R.Civ.P. 12 MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| vs. | (Doc. 13.) |
| THE PERMANENTE MEDICAL GROUP, INC., et al., | |
| Defendants. | |
| _____ / | |

**INTRODUCTION**

Defendant SEIU, United Healthcare Workers – West ("UHW") seeks to dismiss as improperly pled and barred legally and by limitations periods plaintiff Elizabeth McKenna's ("Ms. McKenna's") claims arising from her employment with and termination by defendant The Permanente Medical Group, Inc. ("Kaiser"). Ms. McKenna offers no meaningful opposition to dismissal of her claims against UHW. This Court considered UHW's F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing, pursuant to Local Rule 230(g). For the reasons discussed below, this Court DISMISSES this action against UHW.

# BACKGROUND[1]

## Summary

Kaiser employed Ms. McKenna as a medical assistant during December 19, 1995 to December 3, 2009, when Kaiser terminated Ms. McKenna while she was on medical leave. Ms. McKenna was a member of UHW, a union which entered into a collective bargaining agreement ("CBA") with Kaiser and which represents Kaiser employees. Ms. McKenna pursues against UHW breach of contract and union claims that UHW failed to protect and secure Ms. McKenna's employment interests. UHW challenges the FAC's claims against UHW as lacking sufficient facts and as legally barred.

## Ms. McKenna's Employment Issues

### *Medical Leaves*

As early as May 2004, Ms. McKenna suffered non-work related medical conditions (chronic kidney stones and female issues) to require intermittent leaves of absence.

Ms. McKenna's March 24, 2009 performance evaluation mentioned neither attendance issues nor negative comments. An April 23, 2009 "investigatory conversation" with Ms. McKenna made no mention of attendance problems.

### *Date With Man Who Became Supervisor's Husband*

Ms. McKenna went on a date with a man which "did not go well." Thereafter, Ms. McKenna's supervisor, defendant Michelle Hanrahan ("Ms. Hanrahan"), dated the man and married him. Ms. McKenna began to experience "harassment, retaliation and difficulties at work." Ms. McKenna complained to a supervisor and requested a transfer to another hospital.

### *Union Steward*

In spring 2009, Ms. Stewart was made an UHW steward.

### *Concerns About Coworkers*

On June 3 or 4, 2009, Ms. McKenna grew concerned that a coworker ("first coworker") appeared under the influence of alcohol and/or drugs and wrote a formal notification to supervisors. Kaiser conducted a June 18, 2009 "investigatory conversation" about Ms. McKenna's report. Ms. McKenna

---

[1] The factual recitation is derived generally from Ms. McKenna's First Amended Complaint ("FAC"), the subject of UHW's attacks, as well as other matters which this Court may consider on a F.R.Civ.P. 12(b)(6) motion to dismiss.

was suspended for several days for alleged failure to report timely the first coworker.

During this time, Ms. McKenna reported that another coworker ("second coworker") failed to perform his job duties to the detriment of Ms. McKenna's working group.  The second coworker was reprimanded and began making violent threats against Ms. McKenna's supervisor.  Ms. McKenna overheard the second coworker state on the telephone that he would kill his supervisor and feed her to pigs and that "they don't know what we do to people in our country."

On July 7, 2009, the second coworker waited for Ms. McKenna after work and informed Ms. McKenna that he had something to show her.  The second coworker pulled a bat and knife form his car, ripped off a receipt and stated to the effect that the receipt "could be used as evidence."  Ms. McKenna feared for her supervisor's safety and informed her supervisor "about the verbal threats, as well as the bat and knife."  The second coworker was removed immediately from the workplace.

Kaiser disciplined Ms. McKenna for her report of the second coworker.

To retaliate against Ms. McKenna, the second coworker fabricated a complaint that Ms. McKenna had sexually harassed him. On August 4, 2009, Ms. McKenna informed her supervisors that she wanted to file a formal complaint.

### *Increased Workload*

During the last eight months of her employment, Ms. McKenna was forced to perform the work of three people to violate the CBA.  Management refused to provide Ms. McKenna help despite her complaints and coworkers' comments.

### *Second Coworker's Return*

The second coworker returned to work "around the corner from Ms. McKenna" but did not share Ms. McKenna's workload to result in her increased workload of "the job of three people."  Ms. McKenna feared for her safety and suffered "extreme distress."  The second coworker often glared at Ms. McKenna, who felt intimidated.  The second coworker made hospital machines unavailable to Ms. McKenna to interfere with her job duties.

### *Workers' Compensation Claim*

On September 3, 2009, Ms. McKenna filed a workers' compensation claim for stress-related injury.

### *Leaves And Suspensions*

Ms. McKenna was removed from work during September 1-4, 2009.

On October 1, 2009, Ms. McKenna received approval for a one-year medical leave of absence.

On October 20, 2009, Ms. McKenna was suspended for two days for her reporting the first coworker.

On October 28, 2009, Ms. McKenna filed a grievance.

On November 2, 2009, Ms. McKenna was disciplined for alleged sexual harassment of the second coworker.

On November 10, 2009, Ms. McKenna was called in to discuss her "attendance" although no issue had been raised for seven months "until after Ms. McKenna became a union representative, filed a workers' compensation case, and reported two co-workers for highly unsafe conduct."  On December 1, 2009, Ms. McKenna was "extremely ill" and went on her approved medical leave.

### **Ms. McKenna's Termination**

Kaiser mailed Ms. McKenna a December 3, 2009 termination letter, which noted:

> We have made multiple attempts to meet with you to resolve an investigatory conversation that was held with you on 11/10/09.  As we have not been successful with meeting with you in person and we are unsure of when you will be at work again, this notice serves as notice of termination of your employment with Kaiser Permanente effective immediately.

Ms. McKenna was terminated 17 days prior to her 15-year mark, at which she would vest in additional retirement benefits.  Ms. McKenna was treated differently than other Kaiser employees "who are given a Last Chance Agreement prior to termination."

### **Post-Termination Activity**

About ten days after Ms. McKenna's termination, UHW and Kaiser were to conduct a meeting on Ms. McKenna's behalf.  Ms. McKenna was ill, and UHW representatives told Ms. McKenna that she need not attend and that they would "handle it for her."  After the meeting, Ms. McKenna received no response to her numerous telephone calls and inquiries as to the meeting and "union issues."

/ / /

/ / /

/ / /

Yvonne Davilla ("Ms. Davilla")[2] represented to Ms. McKenna that "they were 'helping her,' and were 'still working on her,' and that they would 'take one thing at a time.'" Ms. McKenna indicated that the absence of response to her calls suggested the lack of assistance. Ms. Davilla angrily retorted that Ms. McKenna had "exhausted her," "I'm done with you," "if you fight us, we will fight against you," and "you cannot sue us."

### Ms. McKenna's Claims Against UHW

On October 11, 2010, Ms. McKenna filed an administrative charge with the California Department of Fair Employment and Housing ("DFEH"). A March 25, 2011 right-to-sue letter was issued.

On February 28, 2012, prior to removal from state court, Ms. McKenna filed her original complaint against UHW, Kaiser and Ms. Hanrahan (collectively "defendants"). After defendants filed motions to dismiss, Ms. McKenna filed her FAC as a matter of course under F.R.Civ.P. 15(a) to allege against UHW claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of duty of fair representation. This Court will discuss the claims below.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

UHW faults the FAC's claims against UHW as preempted, time barred and lacking sufficient facts. Ms. McKenna claims that UHW "unreasonably and arbitrarily failed to take action" for Ms. McKenna.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

---

[2] The FAC does not identify Ms. Davilla's position, and this Court surmises that she is an UHW representative.

5

*Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

Additionally, a court may consider exhibits submitted with the complaint. *Durning v. First*

*Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).   A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[3]  A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

With these standards in mind, this Court turns to UHW's challenges to the FAC's claims.

**Breach Of Contract And Implied Covenant Of Good Faith And Fair Dealing**

The FAC's (first) breach of contract claim alleges that Ms. McKenna is a third party beneficiary of the CBA, which was intended to benefit her.  As to UHW, the breach of contract claim alleges that Ms. McKenna filed three grievances "which were not handled in conformance with the CBA grievance procedures" in that Kaiser and UHW "failed to respond to Ms. McKenna's complaints or to hold meetings required by the CBA."

The FAC's (second) breach of the implied covenant of good faith and fair dealing claim ("implied covenant claim") alleges that Ms. McKenna is a third party beneficiary of the CBA and that:

> Ms. McKenna was unable to perform some of her job duties because Defendants . . . harassed her and retaliated against her for making reports about safety violations, co-workers, and violations of other regulations. . . . Defendants's conduct was a failure to act fairly and in good faith.

/ / /

---

[3] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

*Federal Preemption – CBA Interpretation*

UHW argues that the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 180, et seq., preempts the breach of contract and implied covenant claims because evaluation of them requires CBA interpretation.

LMRA section 301 provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The body of federal common law authorized under LMRA section 301 completely preempts state law claims based on a collective bargaining agreement: "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841 (1983). The "preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.' Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Construction Laborers*, 463 U.S. at 23, 103 S.Ct. 2841. "All that is required for a cause of action to exist under section 301 is that the suit be based on an alleged breach of contract between an employer and a labor organization and that the resolution of the lawsuit be focused upon and governed by the terms of the contract." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048 (9th Cir.), *cert. denied*, 484 U.S. 986, 108 S.Ct. 504 (1987).

LMRA section 301 "vests jurisdiction in the federal courts to hear claims for violation of labor contracts." *Tellez v. Pacific Gas and Electric Company, Inc.*, 817 F.2d 536, 537 (9th Cir.), *cert. denied*, 484 U.S. 908, 108 S.Ct. 251 (1987). Action in federal or state court alleging breach of a labor contract must either be brought under LMRA section 301 and resolved according to federal law or dismissed as preempted. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911 (1985); *see United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368, 110 S.Ct. 1904 (1990) ("any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal

1  law under § 301").

2      The key to determine preemption's scope is whether the claims can be resolved only by referring to a collective bargaining agreement's terms, not how the complaint is cast. *Allis-Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912; *Tellez*, 817 F.2d at 537. A state law claim is preempted by LMRA section 301 "only if such application requires the interpretation of a collective bargaining agreement." *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 412, 108 S.Ct. 1877, 1885 (1988). The U.S. Supreme Court has expanded LMRA 301 preemption to matters "substantially dependent upon analysis of the terms of [a collective bargaining agreement]." *Allis-Chalmers*, 471 U.S. at 220, 105 S.Ct. 1904 (1985).

    UHW points out the limited breach of contract allegation that UHW "failed to respond to Ms. McKenna's complaints or to hold the meetings required by the CBA." UHW explains that determination whether UHW committed such breaches requires examination and interpretation of the CBA.

    Ms. McKenna responds that "[i]t is possible" that UHW breached the CBA "in a manner independent of its failure to represent Plaintiff, and Plaintiff should be permitted to so allege." Ms. McKenna continues that her "contract claims are not equivalent to her duty of fair representation claim."

    The CBA includes progressive grievance procedures beginning with "an informal process," matriculating to written procedures, and culminating with arbitration. UHW is correct that CBA interpretation and application is necessary to ascertain if Ms. McKenna's grievances "were not handled in conformance with the CBA." *See Kohama v. McCabe*, 197 Fed.Appx. 535, 536 (9th Cir. 2006) (claims of violations of CBA sick leave provisions and termination in contravention of a CBA "are 'substantially dependent' on an analysis of the CBA and therefore preempted by § 301 of the Labor Management Relations Act"); *Eddy v. Radar Pictures, Inc.*, 215 Fed.Appx. 575, 579 (9th Cir. 2006) ("Because Eddy's breach of contract claim required the interpretation of the collective bargaining agreement, we affirm the district court's holding that the claim was governed by and also preempted by LMRA § 301.") The breach of contract claim is substantially dependent on CBA analysis to render it preempted by LMRA section 301.

    UHW further notes that LMRA section 301 preempts implied covenant claims. "Where the collective bargaining agreement contains terms governing job security, this breach of the covenant of good faith and fair dealing cause of action is preempted." *Cook v. Lindsay Olive Growers*, 911 F.2d 233,

239-240 (9th Cir. 1990) (plaintiff's "tort claim for breach of the implied covenant of good faith and fair dealing is preempted under § 301"). In *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2927 (1993), the Ninth Circuit explained preemption of implied covenant claims for unionized plaintiffs:

> Under California law, a claim for breach of this implied covenant is necessarily based on the existence of an underlying contractual relationship, and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract. *Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of Cal.*, 36 Cal.3d 752, 768, 686 P.2d 1158, 1166, 206 Cal.Rptr. 354, 362 (1984). This cause of action developed in the employment context to protect the job security of at-will employees who could be fired without cause under common law. No comparable lack of job security, however, generally exists for unionized employees, whose employment relationship is governed by a collective bargaining agreement. *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1147 (9th Cir.1988) (citing *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1373 n. 9, 1374-75 n. 11 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985)). Therefore, we have generally held that section 301 preempts the California state cause of action for breach of the implied covenant of good faith and fair dealing when an employee enjoys comparable job security under a collective bargaining agreement. *See, e.g., Cook v. Lindsay Olive Growers*, 911 F.2d 233, 238-39 (9th Cir.1990); *Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir.1989); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir.1987).

The UHW CBA provides: "No Employee shall be disciplined or discharged without just cause." The CBA covers progressive discipline and grievance procedures. As such, UHW concludes LMRA section 301 preempts the FAC's implied covenant claim in that the CBA covers Ms. McKenna's job security and conditions to terminate her.

UHW is correct. Ms. McKenna benefitted from the CBA, which governed her discipline and termination as a Kaiser employee. The FAC's implied covenant claim is preempted and thus subject to dismissal. Ms. McKenna offers nothing to avoid preemption of her breach of contract and implied covenant claims.

### *Duty Of Fair Representation*

UHW argues that the breach of contract and implied covenant claims are further preempted by the duty of fair representation.

The National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, et seq., addresses exclusive union representation of union members and provides: "Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such

purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment . . ." 29 U.S.C. § 159(a) ("section 159(a)").

Section 159(a) "authorizes a union to act as the exclusive agent for its members in collective bargaining with the employer." *Madison v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F.Supp.2d 1244, 1256 (C.D. Cal. 2000). "The duty of fair representation is a statutory duty implied from the grant to the union by section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), of exclusive power to represent all employees of the collective bargaining unit." *Retana v. Apartment, Motel, Hotel and Elevator Operators Union, Local No. 14, AFL-CIO*, 453 F.2d 1018, 1021-22 (9th Cir.1972). The exclusivity of the agency imposes on a union the duty "to represent all members . . . without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903 (1967). The duty of fair representation applies to all representational activity in which the union engages, including "negotiation, administration, and enforcement of collective bargaining agreements." *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 47, 99 S.Ct. 2121 (1979); *Airline Pilots Ass'n v. O'Neil*, 499 U.S. 65, 67, 111 S.Ct. 1127 (1991). "Since the duty is derived from the LMRA, it is defined solely by federal law . . . and preempts the application of state substantive law that seeks to regulate conduct within its ambit . . . ." *Madison*, 132 F.Supp.2d at 1256 (citations omitted).

To determine whether "state law claims assert rights separate from those secured by the federal duty of fair representation, the court must look to the conduct at the heart of the controversy." *Madison*, 132 F.Supp.2d at 1256 (citations omitted).

The breach of contract claim challenges the handling of Ms. McKenna's grievances and failure to respond to her complaints and to conduct meetings. In essence, the breach of contract claim alleges that UHW breached its duty of fair representation by failing to represent Ms. McKenna properly. Such alleged breach is the heart of the controversy. As such, the breach of contract claim is preempted by alleged breach of fair representation and subject to dismissal.

Turning to the implied covenant claim, UHW argues that the conduct "at the heart" of the claim is whether UHW breached its duty of fair representation when it refused to pursue three grievances for

Ms. McKenna.  UHW contends that such refusal addresses its duty of fair representation to preempt the implied covenant claim.

Again, UHW is correct.  The implied covenant claim addresses UHW's representation of Ms. McKenna.  UHW's duties to represent Ms. McKenna are defined by federal law to preempt further the implied covenant claim and to render it subject to dismissal.

### *Third-Party Beneficiary*

UHW challenges the claim that Ms. McKenna is a third party beneficiary of the CBA in the absence of supporting promises or agreements.  UHW notes that the CBA represents the "wages and working conditions" negotiated by UHW and Kaiser and that the CBA's grievance procedure is a mechanism which UHW may at its choice employ to address CBA violations.  UHW faults the FAC's failure to identify a CBA provision to indicate an intent to create obligations enforceable against UHW by individual employees such as Ms. McKenna.

Ms. McKenna lacks third-party beneficiary rights as against UHW.  *See Int'l Broth. Of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 865, 107 S.Ct. 2161 (1987) (Stevens, concurring and dissenting).  Ms. McKenna makes no effort to identify third-party beneficiary rights.  Any rights she derives under the CBA apply to Kaiser, not UHW, her union and negotiator.  Ms. McKenna lacks third-party beneficiary claims against UHW.

### **Breach Of Duty Of Fair Representation**

The FAC's (seventeenth) breach of duty of fair representation claim alleges that:

1. "Ms. McKenna was not notified of the result of her complaints or grievances even after she was terminated";
2. UHW "acted arbitrarily in bad faith" in "failing to respond to her inquiries";
3. UHW "wrongfully failed to prosecute three grievances filed on behalf of Ms. McKenna";
4. UHW "breached its duty to represent Ms. McKenna fairly during the grievance process on three occasions";
5. UHW's "decision to abandon Ms. McKenna's grievances was so far outside a wide range of reasonableness, as to be irrational"; and
6. Ms. Davilla initially indicated that UHW "was working on Ms. McKenna's matter" but

abruptly and arbitrarily "refused to help Ms. McKenna and rejected any further assistance stating she was "exhausted by Ms. McKenna" and was "done with her."

### ***Scope Of Duty***

UHW challenges the fair representation claim as lacking sufficient facts based on the claim's reliance on UHW's failure to pursue three grievances.

The U.S. Supreme Court explained the basis and scope of the duty of fair representation:

> The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative. In such a system, if individual employees are not to be deprived of all effective means of protecting their own interests, it must be the duty of the representative organization to "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 164, n. 14,103 S.Ct. 2281 (1983) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967)).

"The Supreme Court has long recognized that unions must retain wide discretion to act in what they perceive to be their members' best interests." *Peterson v. Kennedy*, 771 F.2d 1244, 1253 (9th Cir.1985) (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337-38, 73 S.Ct. 681, 685-86 (1953)). To that end, the Ninth Circuit has "stressed the importance of preserving union discretion by narrowly construing the unfair representation doctrine." *Johnson v. United States Postal Service*, 756 F.2d 1461, 1465 (9th Cir.1985, as amended May 3, 1985) (citation omitted). "[B]ecause a union balances many collective and individual interests in deciding whether and to what extent it will pursue a particular grievance, courts should 'accord substantial deference' to a union's decisions regarding such matters." *Peterson*, 771 F.2d at 1253 (quoting *Johnson*, 756 F.2d at 1466).

A such, a "union breaches its duty of fair representation only when its conduct toward a member of the collective bargaining unit is 'arbitrary, discriminatory, or in bad faith.'" *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916. "The duty is designed to ensure that unions represent fairly the interests of all of their members without exercising hostility or bad faith toward any." *Peterson*, 771 F.2d at 1253.

A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' *Ford Motor*

*Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953), as to be irrational." *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 67, 111 S.Ct. 1127 (1991). To establish a union's arbitrary or bad-faith conduct, "[t]here must be substantial evidence of fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America v. Lockridge*, 403 U.S. 274, 299, 91 S.Ct. 1909 (1971) (citations omitted).

UHW faults the fair representation claim as based on "conclusory allegations" that UHW failed to prosecute three grievances, failed to notify Ms. McKenna of the results of her grievances, irrationally abandoned grievances, and that Ms. Davilla refused to help Ms. McKenna. UHW challenges the FAC's failure to allege facts that UHW acted arbitrarily, with discrimination, or in bad faith. UHW notes the absence of facts that its conduct was so far outside a wide range of reasonableness to be irrational. UHW faults the FAC's failure to identify Ms. Davilla and whether she was an UHW agent.

The essence of the fair representation claim is that UHW failed to pursue three grievances and that Ms. Davilla refused to assist Ms. McKenna because Ms. McKenna exhausted Ms. Davilla. The FAC lacks facts that UHW breached its duty of fair representation to Ms. McKenna. Failure to prosecute three grievances does not equate to arbitrary, discriminatory or bad faith action under the facts alleged in the FAC. The FAC raises inferences that UHW exercised discretion not to pursue Ms. McKenna's grievances because Ms. McKenna was unreasonable. The Ninth Circuit has "never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance." *Peterson,* 771 F.2d at 1254. "A union's decision to pursue a grievance based on its merits or lack thereof is an exercise of the union's judgment." *Ajifu v. International Ass'n of Machinists and Aerospace Workers (AFL-CIO) Dist.,* 205 Fed.Appx. 488, 490 (9th Cir. 2006). Moreover, "a disagreement between a union and an employee over a grievance, standing alone, [does not] constitute evidence of bad faith, even when the employee's grievance is meritorious." *Moore v. Bechtel Power Corp.*, 840 F.2d 634, 637 (9th Cir.1988). The FAC raises no inferences of UHW's fraud, deceit or dishonesty toward Ms. McKenna to subject the fair representation claim to dismissal, especially given Ms. McKenna's failure to support the claim.

### *Limitations Defense*

UHW challenges the fair representation claim as barred by the six-month limitations of 29 U.S.C.

§ 160(b) in that Ms. McKenna's February 28, 2012 filing of her original complaint is more than two years after UHW's alleged breach of the duty of fair representation.

"[I]n a duty of fair representation case, the six-month period generally begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). In *Galindo*, 793 F.2d at 1509, the Ninth Circuit further explained:

> The vast majority of duty of fair representation claims arise in the grievance procedure context: the employee claims that a union failed to process a grievance or mishandled its presentation. In determining when the six-month period accrues, the simplest case is one where a union decides not to file a grievance; the cause of action generally accrues when the employee learns or should have learned of the union's decision.

UHW notes the FAC's most recent reference to approximately 10 days after Ms. McKenna's December 3, 2009 termination, or around December 13, 2009, when UHW and Kaiser were to hold a meeting on Ms. McKenna's behalf. UHW concludes that in the absence of alleged wrongdoing after December 13, 2009, the statute of limitations expired no later than June 13, 2009 to render her February 28, 2012 original complaint filing untimely for an unfair representation claim.

The record reflects that the unfair representation claim is time barred to further warrant its dismissal. Ms. McKenna offers nothing to the contrary.

### **Attempt To Amend**

Ms. McKenna suggests that she should be granted an opportunity to file another amended complaint. Ms. McKenna ignores that she already proceeds on an amended complaint and that she offers neither support for her claims against UHW nor meaningful opposition to UHW's challenges. Ms. McKenna fails to articulate what further facts she could allege or why she did not allege them in either her original complaint or the FAC. Ms. McKenna offers nothing to justify another attempt to amend.

### **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice this action against UHW; and
2. DIRECTS the clerk to enter judgment in favor of defendant SEIU, United Healthcare Workers – West and against plaintiff Elizabeth McKenna in that there is no just reason

to delay to enter such judgment given that the Ms. McKenna's claims against UHW and UHW's alleged liability are clear and distinct from claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

**Dated:   August 2, 2012**               /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE