1
2
3
4
5
6
7
8
9
10

**IN THE UNITED STATES DISTRICT COURT**

11

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

12
13

ELIZABETH McKENNA,                                    CASE NO. CV F 12-0849 LJO GSA

14
                          Plaintiff,              **ORDER ON KAISER DEFENDANTS'**
15                                                **F.R.Civ.P. 12 MOTION TO DISMISS**
        vs.                                       **AMENDED CLAIMS**
16                                                (Doc. 16.)
THE PERMANENTE MEDICAL
17   GROUP, INC., et al.,

18                        Defendants.

19   _____/

20                                    __INTRODUCTION__

21          Defendant The Permanente Medical Group, Inc. ("Kaiser") and defendant Michelle Hanrahan

22   ("Ms. Hanrahan"), a Kaiser supervisor, seek to dismiss as improperly pled and legally barred plaintiff

23   Elizabeth McKenna's ("Ms. McKenna's")  claims arising from her employment with and termination

24   by Kaiser.  Ms. McKenna appears to contend that her claims are adequately pled to avoid F.R.Civ.P.

25   12(b)(6) dismissal.  This Court considered Kaiser and Ms. Hanrahan's (collectively "defendants'")

26   F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the August 14, 2012 hearing,

27   pursuant to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS in part and

28   DENIES in part dismissal of Ms. McKenna's claims against defendants.

                                              1

1

## BACKGROUND[1]

### Summary

Kaiser employed Ms. McKenna as a medical assistant during December 19, 1995 to December 3, 2009.  Ms. McKenna was a member of former defendant SEIU, United Heathcare Workers – West ("UHW"), a union which entered into a collective bargaining agreement ("CBA") with Kaiser and represents Kaiser employees.  Ms. McKenna pursues against defendants employment and union based claims that defendants failed to protect and secure Ms. McKenna's employment interests and subjected Ms. McKenna to discrimination, retaliation and harassment.  Defendants challenge the FAC's claims as lacking sufficient facts and barred as a matter of law.

### Ms. McKenna's Employment Issues

#### *Medical Leaves*

As early as May 2004, Ms. McKenna suffered non-work related medical conditions (chronic kidney stones and female issues) to require intermittent leaves of absence.

Ms. McKenna's March 24, 2009 performance evaluation mentioned neither attendance issues nor negative comments.  An April 23, 2009 "investigatory conversation" with Ms. McKenna made no mention of attendance problems.

#### *Date With Man Who Became Ms. Hanrahan's Husband*

Ms. McKenna went on a date with a man which "did not go well."  Thereafter, Ms. McKenna's supervisor, Ms. Hanrahan, dated the man and married him.  Ms. McKenna began to experience "harassment, retaliation and difficulties at work."  Ms. McKenna complained to a supervisor and requested a transfer to another hospital.

#### *Union Steward*

In spring 2009, Ms. Stewart was made an UHW steward.

#### *Concerns About Coworkers*

On June 3 or 4, 2009, Ms. McKenna grew concerned that a coworker ("first coworker") appeared

---

[1]     The factual recitation is derived generally from Ms. McKenna's First Amended Complaint ("FAC"), the subject of defendants' attacks, as well as other matters which this Court may consider on a F.R.Civ.P. 12(b)(6) motion to dismiss.

2

under the influence of alcohol and/or drugs and wrote a formal notification to supervisors.  Kaiser conducted a June 18, 2009 "investigatory conversation" about Ms. McKenna's report.  Ms. McKenna was suspended for several days for alleged failure to report timely the first coworker.

During this time, Ms. McKenna reported that another coworker ("second coworker") failed to perform his job duties to the detriment of Ms. McKenna's working group.  The second coworker was reprimanded and began making violent threats against Ms. McKenna's supervisor.[2]  Ms. McKenna overheard the second coworker state on the telephone that he would kill his supervisor and feed her to pigs and that "they don't know what we do to people in our country."

On July 7, 2009, the second coworker waited for Ms. McKenna after work and informed Ms. McKenna that he had something to show her.  The second coworker pulled a bat and knife from his car, ripped off a receipt and stated to the effect that the receipt "could be used as evidence."  Ms. McKenna feared for her supervisor's safety and informed her supervisor "about the verbal threats, as well as the bat and knife."  The second coworker was removed immediately from the workplace.

Kaiser disciplined Ms. McKenna for her report of the second coworker.

To retaliate against Ms. McKenna, the second coworker fabricated a complaint that Ms. McKenna had sexually harassed him.  On August 4, 2009, Ms. McKenna informed her supervisors that she wanted to file a formal complaint.

### *Increased Workload*

During the last eight months of her employment, Ms. McKenna was forced to perform the work of three people to violate the CBA.  Management refused to provide Ms. McKenna help despite her complaints and coworkers' comments.

### *Second Coworker's Return*

The second coworker returned to work "around the corner from Ms. McKenna" but did not share Ms. McKenna's workload to result in her increased workload of "the job of three people."  Ms. McKenna feared for her safety and suffered "extreme distress."  The second coworker often glared at Ms. McKenna, who felt intimidated.  The second coworker made hospital machines unavailable to Ms.

---

[2]        The FAC does not identify the supervisor.

McKenna to interfere with her job duties.

### Workers' Compensation Claim

On September 3, 2009, Ms. McKenna filed a workers' compensation claim for stress-related injury.

### Leaves And Suspensions

Ms. McKenna was removed from work during September 1-4, 2009.

On October 1, 2009, Ms. McKenna received approval for a one-year medical leave of absence.

On October 20, 2009, Ms. McKenna was suspended for two days for her reporting the first coworker.

On October 28, 2009, Ms. McKenna filed a grievance.

On November 2, 2009, Ms. McKenna was disciplined for alleged sexual harassment of the second coworker.

On November 10, 2009, Ms. McKenna was called in to discuss her "attendance" although no issue had been raised for seven months "until after Ms. McKenna became a union representative, filed a workers' compensation case, and reported two co-workers for highly unsafe conduct." On December 1, 2009, Ms. McKenna was "extremely ill" and went on her approved medical leave.

### Ms. McKenna's Termination

Kaiser mailed Ms. McKenna a December 3, 2009 termination letter, which noted:

> We have made multiple attempts to meet with you to resolve an investigatory conversation that was held with you on 11/10/09. As we have not been successful with meeting with you in person and we are unsure of when you will be at work again, this notice serves as notice of termination of your employment with Kaiser Permanente effective immediately.

Ms. McKenna was terminated 17 days prior to her 15-year mark, at which she would vest in additional retirement benefits. Ms. McKenna was treated differently than other Kaiser employees "who are given a Last Chance Agreement prior to termination."

### Post-Termination Activity

About ten days after Ms. McKenna's termination, UHW and Kaiser were to conduct a meeting on Ms. McKenna's behalf. Ms. McKenna was ill, and UHW representatives told Ms. McKenna that she need not attend in that they would "handle it for her." After the meeting, Ms. McKenna received no

4

1   response to her numerous telephone calls and inquiries as to the meeting and "union issues."

2       Yvonne Davilla ("Ms. Davilla")[3] represented to Ms. McKenna that "they were 'helping her,' and

3   were 'still working on her,' and that they would 'take one thing at a time.'" Ms. McKenna indicated that

4   failure to respond to her calls suggested the absence of assistance.  Ms. Davilla angrily retorted that Ms.

5   McKenna had "exhausted her," "I'm done with you," "if you fight us, we will fight against you," and

6   "you cannot sue us."

7                    **Ms. McKenna's Claims Against Defendants**

8       On October 11, 2010, Ms. McKenna filed an administrative charge with the California

9   Department of Fair Employment and Housing ("DFEH").  A March 25, 2011 right-to-sue letter was

10  issued.

11      On February 28, 2012, prior to removal from state court, Ms. McKenna filed her original

12  complaint against defendants and UHW.  After defendants and UHW filed motions to dismiss, Ms.

13  McKenna filed her FAC as a matter of course under F.R.Civ.P. 15(a) to allege against defendants

14  California statutory and common law claims related to her Kaiser employment.  This Court will discuss

15  below the claims which defendants challenge.

16                              **DISCUSSION**

17              **F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

18      Defendants fault the FAC's failure to allege sufficient facts to sustain claims under an existing

19  legal theory or to state a cognizable legal theory to support claims.

20      "When a federal court reviews the sufficiency of a complaint, before the reception of any

21  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

22  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

23  claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

24  Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

25  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

26  theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

27  _____

28  [3]       The SAC does not identify Ms. Davilla's position, and this Court surmises that she is an UHW
    representative.

                                    5

1  *Lombard, Ill.*, 58 F.3d 295, 297 (7ᵗʰ Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

2  of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9ᵗʰ Cir. 2001).

3     In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

4  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

5  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

6  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

7  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

8  *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9ᵗʰ Cir. 2008) (citation omitted).  A court "need not

9  assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

10  *Ringrose*, 788 F.2d 638, 643, n. 2 (9ᵗʰ Cir.1986), and must  not "assume that the [plaintiff] can prove

11  facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

12  alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

13  459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

14  the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney,*

15  *Inc.*, 416 F.3d 940, 946 (9ᵗʰ Cir. 2005).

16     A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires

17  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

18  do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations

19  omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most

20  favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan*

21  *Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain

22  either direct or inferential allegations respecting all the material elements necessary to sustain recovery

23  under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers,*

24  *Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7ᵗʰ Cir. 1984)).

25     In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court

26  explained:

27        . . . a complaint must contain sufficient factual matter, accepted as true, to "state
         a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the

28        plaintiff pleads factual content that allows the court to draw the reasonable inference that

1  the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
2  akin to a "probability requirement," but it asks for more than a sheer possibility that a
   defendant has acted unlawfully.  (Citations omitted.)

3  After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive

4  [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be

5  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d

6  962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

7  The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

8          First, the tenet that a court must accept as true all of the allegations contained in
   a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
9  a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second,
   only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
10 . Determining whether a complaint states a plausible claim for relief will . . . be a
   context-specific task that requires the reviewing court to draw on its judicial experience
11 and common sense. . . . But where the well-pleaded facts do not permit the court to infer
   more than the mere possibility of misconduct, the complaint has alleged – but it has not
12 "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

13         In keeping with these principles a court considering a motion to dismiss can
   choose to begin by identifying pleadings that, because they are no more than conclusions,
14 are not entitled to the assumption of truth. While legal conclusions can provide the
   framework of a complaint, they must be supported by factual allegations. When there are
15 well-pleaded factual allegations, a court should assume their veracity and then determine
   whether they plausibly give rise to an entitlement to relief.

16

17 *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

18 Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate

19 the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069

20 (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to

21 dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision*

22 *Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982).

23 A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running

24 is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

25 on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may

26 be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and*

27 *Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

28 Additionally, a court may consider exhibits submitted with the complaint. *Durning v. First*

7

1  *Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158,

2  1162, n. 2 (C.D. Cal. 2003).   A "court may consider evidence on which the complaint 'necessarily

3  relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim;

4  and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v.*

5  *Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may treat such a document as "part of the complaint,

6  and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."

7  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).  Such consideration prevents "plaintiffs from

8  surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their

9  claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]   A "court may disregard

10  allegations in the complaint if contradicted by facts established by exhibits attached to the complaint."

11  *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning*

12  *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

13          With these standards in mind, this Court turns to defendants' challenges to the FAC's claims.

14                                    **Breach Of Contract**

15          The FAC's (first) breach of contract claim alleges that Ms. McKenna is a third party beneficiary

16  of the CBA, which was intended to benefit her.  The breach of contract claim alleges that  Kaiser failed

17  to adhere to the CBA in that it:

18          1.      Failed to provide a safe workplace in that Kaiser returned the second coworker to work

19                  near Ms. McKenna;

20          2.      Distributed too much work to Ms. McKenna by failing "to provide an equitable

21                  distribution of the three-person workload";

22          3.      Retaliated against and terminated Ms. McKenna for her union activities; and

23          4.      Failed to follow progressive discipline and to handle properly Ms. McKenna's

24                  grievances.

25  / / /

26

27          [4]      "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document

28  in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

### Third Party Beneficiary Rights

Defendants contend that Ms. McKenna lacks a "cognizable claim" for breach of contract in that union members are not third party beneficiaries to a CBA.

California law governs third party beneficiary status under a CBA, "to the extent it is compatible with federal labor policy." *Sepulveda v. Pacific Maritime Ass'n*, 878 F.2d 1137, 1139 (9th Cir.), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 561 (1989). "For a third party to qualify as a beneficiary under a contract, the contracting parties must have intended to benefit that third party, and their intent must appear from the terms of the contract." *Strauss v. Summerhays*, 157 Cal.App.3d 806, 816, 204 Cal.Rptr. 227 (1984). Defendants note that the CBA renders ordinary contract law inapplicable in that the CBA "is not a contract of employment between an employer and a single employee." Defendants cite *MacKay v. Loew's, Inc.*,182 F.2d 170, 172 (9th Cir.), *cert. denied*, 340 U.S. 828, 71 S.Ct. 65 (1950), to support their claim that Ms. McKenna lacks third party beneficiary rights. However, *MacKay*, belies defendants' position:

> A collective bargaining agreement is not a contract of employment. Rather it is an agreement between the union and employer laying down certain conditions of employment which, it is contemplated, are to be incorporated in the separate contracts of hiring with each employee. . . . The employee, in addition to having rights under his individual contract of employment, **may sue directly on the collective bargaining contract as a third party beneficiary** to enforce the provisions in the contract which have been made for his benefit.

*MacKay*, 182 F.2d at 172 (bold added).

Ms. McKenna responds that the CBA was made for the benefit of Kaiser employees and requires safe working conditions and equitable workloads and prohibits discrimination based on union activities and physical condition.

Defendants fail to demonstrate that Ms. McKenna is not entitled to third party beneficiary rights under the CBA, which was intended to protect Kaiser employees such as her. Defendants' cited authority supports that Ms. McKenna may pursue third party beneficiary rights. Defendants third party beneficiary challenges fail.

### Grievance Exhaustion

Defendants further challenge the breach of contract claim on grounds that Ms. McKenna failed to exhaust CBA grievances. "As a general rule in cases to which federal law applies, federal labor policy

requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614 (1965).

In *Cone v. Union Oil Co.,* 129 Cal.App.2d 558, 563-564, 277 P.2d 464 (1954), the California Court of Appeal explained:

> It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies. [Citations.] This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (2 Cal.Jur.2d 304, § 184), is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement.

Ms. McKenna notes that defendants misconstrue the FAC's grievance allegations to the effect that Ms. McKenna filed three grievances which failed to comply with CBA procedures. Ms. McKenna is correct that the FAC alleges that Kaiser failed to handle the three grievances pursuant to CBA procedures. The FAC alleges, to the effect, that Kaiser rebuffed Ms. McKenna's attempts to exhaust CBA grievance procedures. Defendants' attempt to raise a grievance exhaustion defense fails.

### *Ms. Hanrahan's Liability*

The breach of contract claim includes Ms. Hanrahan as a defendant. Defendants fault a third party beneficiary claim against Ms. Hanrahan, who is not a party to the CBA and has not contractual relationship with Ms. McKenna. Defendants are correct that the FAC lacks facts to support a breach of contract claim against Ms. Hanrahan to warrant the claim's dismissal as to her.

### **Breach Of Implied Covenant Of Good Faith And Fair Dealing**

The FAC's (second) breach of the implied covenant of good faith and fair dealing claim ("implied covenant claim") alleges:

> Ms. McKenna was unable to perform some of her job duties because Defendants . . . harassed her and retaliated [sic] her for making reports about safety violations, coworkers, and violations of other regulations. . . . Defendants's conduct was a failure to act fairly and in good faith.

### *Effect Of CBA*

Defendants argue that Ms. McKenna lacks an "independent recourse to claim a breach of the

implied covenant" in that the CBA governs Ms. McKenna's employment and circumstances to terminate her.  Defendants argue that a covenant of good faith and fair dealing cannot be implied "into employment relationships governed by a CBA."

In *Milne Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991), *cert. denied*, 508 U.S. 959, 113 S.Ct. 2927 (1993), the Ninth Circuit explained absence of implied covenant claims for unionized plaintiffs:

> Under California law, a claim for breach of this implied covenant is necessarily based on the existence of an underlying contractual relationship, and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract. *Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of Cal.*, 36 Cal.3d 752, 768, 686 P.2d 1158, 1166, 206 Cal.Rptr. 354, 362 (1984). This cause of action developed in the employment context to protect the job security of at-will employees who could be fired without cause under common law. No comparable lack of job security, however, generally exists for unionized employees, whose employment relationship is governed by a collective bargaining agreement. *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1147 (9th Cir.1988) (citing *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1373 n. 9, 1374-75 n. 11 (9th Cir.1984), *cert. denied*, 471 U.S. 1099, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985)).

Implied covenants "are justified only when they are not inconsistent with some express term of the contract."  *Tanner v. Title Ins. & Trust Co.*, 20 Cal.2d 814, 824, 129 P.2d 383 (1942).

### Absence Of Contract And Breach

Feel fr Defendants challenge the FAC's absence of allegations to identify a contract of which Kaiser allegedly breached an implied covenant in that the FAC merely alleges that Kaiser's conduct prevented Ms. McKenna to perform some job duties.  Defendants point to an absence of allegations of Kaiser's deliberate actions to frustrate "the reasonable expectations of any employment agreement" between Ms. McKenna and Kaiser.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031, 14 Cal.Rptr.2d 335 (1992). "There is no obligation to deal fairly or in good faith absent an existing

contract." *Racine & Laramie*, 11 Cal.App.4th at 1032, 14 Cal.Rptr.2d 335.

An implied covenant claim "must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted). The "scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

Ms. McKenna raises no meaningful opposition to defendants' challenges to the implied covenant claim. Ms. McKenna, as a unionized employee, fails to demonstrate that she is entitled to implied covenant protection. In the absence of a source of an implied covenant, the FAC's implied covenant fails, especially as to Ms. Hanrahan who was not a party to a contract with Ms. McKenna. Th FAC lacks factual or legal support for an implied covenant to warrant dismissal of the FAC's implied covenant claim.

### Discrimination Based On Union Activities

The FAC's third claim appears to allege that defendants discriminated against Ms. McKenna based on her union activities to violate the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, et seq., and the California Labor Code. Defendants contend that Ms. Hanrahan is not subject to the claim

1    in that she is not an employer.

2         The NLRA defines an employer to include "any person acting as an agent of an employer,

3    directly or indirectly."  Defendants note that to ascertain employer status, courts look to whether the

4    alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled

5    employee work schedules or conditions of employment, (3) determined the rate and method of payment,

6    and (4) maintained employment records." *Bonnette v. California Health and Welfare Agency*, 704 F.2d

7    1465, 1470 (9th Cir. 1983) (addressing alleged violations of Fair Labor Standards Act).

8         Defendants further fault the claim's reference to California Labor Code section 2922's at will

9    employment codification in the absence of facts to establish Ms. Hanrahan as Ms. McKenna's employer.

10        Defendants' points are well taken.  The FAC lacks facts that Ms. Hanrahan is an employer.  Ms.

11   McKenna poses no opposition to the claim's dismissal as to Ms. Hanrahan.  As such, the FAC's third

12   claim is dismissed as to Ms. Hanrahan only in that defendants did not seek Kaiser's dismissal.

13                       **Intentional Infliction Of Emotional Distress**

14        The FAC's (sixth) intentional infliction of emotional distress ("IIED") claim alleges that

15   defendants "engaged in the acts heretofore described deliberately and intentionally in order to cause Ms.

16   McKenna severe emotional distress" or engaged in such conduct in reckless disregard of the probability

17   of causing Ms. McKenna severe emotional distress.  The IIED claim further alleges that Ms. McKenna

18   "suffered anguish, embarrassment, anxiety, nervousness, humiliation, worry . . . and shame."

19        Defendants challenge the absence of facts to support elements of an IIED claim.

20                                      ***Elements***

21        The elements of an IIED claim are: (1) defendant's outrageous conduct; (2) defendant's intention

22   to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering

23   severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious

24   (outrageous) conduct and the emotional distress.  *Nally v. Grace Community Church of the Valley*, 47

25   Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989)*;Cole*

26   *v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987); *Schneider v.*

27

28

1    *TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991).[5]

2                                *Outrageous Conduct*

3         The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually

4    tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185

5    Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198

6    (1979)).  Conduct is extreme and outrageous when it is of a nature which is especially calculated to

7    cause, and does cause, mental distress.  Liability does not extend to mere insults, indignities, threats,

8    annoyances, petty oppressions, or other trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214

9    Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

10        "Whether a defendant's conduct can reasonably be found to be outrageous is a question of law

11   that must initially be determined by the court; if reasonable persons may differ, it is for the jury to

12   determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds*, 152 Cal.App.4th 518, 534,

13   61 Cal.Rptr.3d 304 (2007).  There is no bright line standard for judging outrageous conduct, and a

14   case-by-case appraisal of conduct is required.  *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76

15   Cal.Rptr.2d 540 (1998).

16        Defendants' criticize as insufficient the FAC's mere allegations that defendants' conduct was

17   outrageous with no supporting facts. Without pleading facts of defendants' outrageous conduct, "no

18   cause of action for intentional infliction of emotional distress will stand." *Ankeny v. Lockheed Missiles*

19   *and Space Co.*, 88 Cal.App.3d 531, 536, 151 Cal.Rptr. 828 (1979).  Defendants argue that the IIED

20   claim is doomed with no facts of their extreme or outrageous conduct.

21                            *Intentional Or Reckless Conduct*

22        Defendants further challenge the FAC's absence of facts that they acted with intention to cause,

23   or with reckless disregard of the probability to cause, emotional distress.

24        To support an IIED claim, the conduct must be more than "intentional and outrageous. It must

25   _____

26        [5]        Other California courts have identified the elements as "(1) extreme and outrageous conduct by the
     defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff
27   suffered severe or extreme emotional distress; and (3) the plaintiff's injuries were actually and proximately caused by the
     defendant's outrageous conduct."  *Cochran v. Cochran*, 65 Cal.App.4th 488, 494, 76 Cal.Rptr.2d 540 (1998) (citing
28   *KOVR-TV, Inc. v. Superior Court*, 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (1995)).

                                            14

be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991). The defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 1001, 25 Cal.Rptr.2d 550 (1993). The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

Ms. McKenna responds that the IIED claim is supported properly by allegations that:

1.  Ms. Hanrahan followed Ms. McKenna to another hospital to which Ms. McKenna transferred to avoid Ms. Hanrahan;

2.  Ms. McKenna was reprimanded for reporting the first and second coworkers and for sexually harassing the second coworker after he fabricated a complaint against Ms. McKenna;

3.  The second coworker was positioned near Ms. McKenna to intimidate and scare her;

4.  Ms. McKenna was given the workload of three employees; and

5.  Ms. McKenna was terminated within days of vesting in additional retirement.

The FAC fails to allege outrageous conduct with intention to cause or reckless disregard to cause severe emotional distress. The FAC fails to identify Kaiser employees or management who engaged in alleged outrageous conduct other than Ms. Hanrahan. As to her, the FAC merely alleges she transferred to the same hospital to which Ms. McKenna had earlier transferred. There are no allegations or inferences that Ms. Hanrahan transferred to stalk or seek out Ms. McKenna. The FAC fails to identify who reprimanded Ms. McKenna, who positioned the second coworker near her, and who gave her an increased workload. Such omissions are fatal to establish necessary outrageous conduct with intention to cause or reckless disregard to cause severe emotional distress.

15

1   In addition, the FAC raises inferences that Ms. McKenna had disputes with coworkers to which

2   she contributed and in turn resulted in her discipline.  "Managing personnel is not outrageous conduct

3   beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of

4   society. A simple pleading of personnel management activity is insufficient to support a claim of

5   intentional infliction of emotional distress, even if improper motivation is alleged." *Janken v. GM*

6   *Hughes Electronics*, 46 Cal.App.4th 55, 80, 53 Cal.Rptr.2d 741 (1996).  The FAC lacks facts to support

7   necessary IIED elements.

8                                 ***Severe Emotional Distress***

9       The IIED claim is further susceptible given the absence of alleged facts that Ms. McKenna

10  suffered severe emotional distress.

11      "With respect to the requirement that the plaintiff show severe emotional distress, this court has

12  set a high bar." *Hughes v. Pair*, 46 Cal.4th 1035, 1051, 209 P.3d 963 (2009).  "Severe emotional

13  distress means 'emotional distress of such substantial quality or enduring quality that no reasonable

14  [person] in civilized society should be expected to endure it.'" *Potter*, 6 Cal.4th at 1004, 25 Cal.Rptr.2d

15  550.  "'[S]evere emotional distress' means highly unpleasant mental suffering or anguish 'from socially

16  unacceptable conduct' . . . , which entails such intense, enduring and nontrivial emotional distress that

17  'no reasonable [person] in a civilized society should be expected to endure it.'" *Schild v. Rubin*, 232

18  Cal.App.3d 755, 762-763, 283 Cal.Rptr. 533 (1991) (citations omitted).

19      "Every employee who believes he has a legitimate grievance will doubtless have some emotional

20  anguish occasioned by his belief that he has been wronged." *Magnuson v. Burlington Northern, Inc.*,

21  576 F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318 (1978).

22      The FAC raises inferences that Ms. McKenna suffered no more than anguish corresponding to

23  her belief that she was wronged.  The IIED claim makes sweeping references to "anguish,

24  embarrassment, anxiety, nervousness, humiliation, worry . . . and shame" with no facts to support such

25  symptoms or conditions.

26      Ms. McKenna fails to offer meaningful support for the IIED claim to warrant the claim's

27  dismissal.

28  / / /

16

**Negligent Infliction Of Emotional Distress**

The FAC's (seventh) negligent infliction of emotional distress ("NIED") claim alleges that defendants owed Ms. McKenna a duty "to ensure that her workplace environment was healthful, safe, and free of hostility, harassment, discrimination, and retaliation," that "Defendants were negligent," and that "Ms. McKenna suffered serious emotional distress."

NIED is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587 (1993). California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter*, 6 Cal.4th at 984, 25 Cal.Rptr.2d 550. The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

NIED includes "at least two variants of the theory" – "bystander" cases and "direct victim" cases. *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037, 71 Cal.Rptr.2d 891, 892 (1998). "Bystander" claims are typically based on breach of a duty owed to the public in general (*Christensen v. Superior Court*, 54 Cal.3d 868, 884, 2 Cal.Rptr.2d 79 (1991)), whereas a right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff (*Burgess v. Superior Court*, 2 Cal.4th 1064, 1073-1074, 9 Cal.Rptr. 615 (1992); *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98).

"'Direct victim' cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." *Wooden*, 61 Cal.App.4th at 1038, 71 Cal.Rptr.2d at 893-894. In "direct victim" cases, "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr.2d 615. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal.4th

17

1  at 985, 25 Cal.Rptr.2d 550.

2      Defendants challenge the FAC's lack of factual allegations that they owed or breached a duty to

3  Ms. McKenna and in turn caused her damage.  Defendants criticize the NIED's claim's conclusion that

4  "Defendants were negligent."

5      Ms. McKenna notes that she pursues a direct victim NIED claim arising from an employee-

6  employer relationship.   As such, Ms. McKenna holds Kaiser to duties "to stop a supervisor's

7  harassment," to assign employees a reasonable workload, to discipline employees reasonably, and to

8  avoid employee termination based on pretext.

9      Defendants offer no meaningful opposition to existence of certain employer duties.  The thrust

10  of defendants' challenge is the FAC's absence of facts to support breach of actionable duties.  Such

11  challenge is valid.  Ms. McKenna fails to identify facts to support alleged breach of duty.  Again, Ms.

12  McKenna fails to identify Kaiser employees or management who assigned her an unreasonable

13  workload, who punished her unreasonably, who failed to stop harassment, and who terminated her based

14  on pretext.  Thus, the NIED claims fails for reasons similar to the failure of the IIED claim.  Moreover,

15  the FAC lacks facts to demonstrate that Ms. McKenna suffered emotional distress caused by defendants.

16  The NIED claim makes sweeping references to "anguish, embarrassment, anxiety, nervousness,

17  humiliation, worry . . . and shame" with no facts to support such symptoms or conditions.

18      Like the IIED claim, the NIED is subject to dismissal.

19      **FEHA Failure To Accommodate And Failure To Engage In Interactive Process**

20      The FAC's ninth claim is entitled "Disability Discrimination/Reasonable Accommodation, Cal.

21  Gov. Code § 12940(m), (n)."  It alleges: "Defendants failed to provide reasonable accommodation for

22  Ms. McKenna's medical condition," and "Kaiser terminated her when she had just begun her medical

23  leave" so that "no accommodation was provided."

24      The ninth claim proceeds under the California Fair Employment and Housing Act ("FEHA"),

25  Cal. Gov. Code, §§ 12900, et. seq.  FEHA declares "as a public policy of this state that it is necessary

26  to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment

27  without discrimination or abridgment on account of . . . physical disability, mental disability, medical

28  condition . . ."  Cal. Gov. Code, § 12920.

1    FEHA renders as an unlawful employment practice an employer's failure "to engage in a timely,

2    good faith, interactive process with the employee or applicant to determine effective reasonable

3    accommodations, if any, in response to a request for reasonable accommodation by an employee or

4    applicant with a known physical or mental disability or known medical condition." Cal. Gov. Code, §

5    12940(n) ("section 12940(n)"). "An employee may file a civil action based on the employer's failure

6    to engage in the interactive process." *Claudio v. Regents of Univ. of Cal.*, 134 Cal.App.4th 224, 244,

7    35 Cal.Rptr.3d 837 (2005). "The interactive process is triggered either by a request for accommodation

8    by a disabled employee or by the employer's recognition of the need for such an accommodation."

9    *Swonke v. Sprint, Inc.*, 327 F.Supp.2d 1128, 1137 (N.D. Cal. 2004).

10    FEHA also renders as an unlawful employment practice "[f]or an employer . . . to fail to make

11    reasonable accommodation for the known physical . . . disability of an . . . employee." Cal. Gov. Code,

12    § 12940(m) ("section 12940(m)"). To establish a FEHA claim for failure to make reasonable

13    accommodation, a plaintiff must show that, at the time of the alleged failure, (1) he had a disability of

14    which the employer was aware, (2) he was able to perform the essential functions of the job at issue with

15    or without accommodation, i.e., that he was qualified individual, and (3) the employer failed to

16    reasonably accommodate for his disability. *Jadwin v. County of Kern*, 610 F.Supp.2d 1129, 1175-1176

17    (E.D. Cal. 2009).

18    FEHA defines "reasonable accommodation" to include:

19         (1) Making existing facilities used by employees readily accessible to, and usable
          by, individuals with disabilities.

20

21         (2) Job restructuring, part-time or modified work schedules, reassignment to a
          vacant position, acquisition or modification of equipment or devices, adjustment or
          modifications of examinations, training materials or policies, the provision of qualified
22        readers or interpreters, and other similar accommodations for individuals with
          disabilities.

23

24    Cal. Gov. Code, § 12926(o).

25    In *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal.App.4th 952, 983, 83 Cal.Rptr.3d 190

26    (2008), the California Court of Appeal explained the distinction between failure to accommodate and

27    failure to engage in the interactive process:

28         Section 12940(m) [failure to accommodate] applies even without a showing that

19

the employer failed to engage in the interactive process. Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process and identifies a reasonable accommodation but fails to provide it, a plaintiff may sue under section 12940(m). Section 12940(n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process. In short, the two causes of action address different factual circumstances.

Defendants challenge the ninth claim's attempt to blur failure to accommodate and failure to engage in interactive process into one claim in that they are separate causes of action and must be pled separately. Defendants criticize the FAC's allegations to attempt to state section 12940(m) and (n) claims against Kaiser. Defendants point to FAC allegations that Ms. McKenna required intermittent leaves to accommodate her disability and that Ms. McKenna took approved leaves of absence of six and 12 months to demonstrate that Kaiser engaged in the interactive process and accommodated Ms. McKenna. Defendants point to the absence of facts that Kaiser failed to engage in the interactive process or failed to accommodate her.

In her opposition papers, Ms. McKenna notes that she bases her ninth claim on her termination during medical leave. Ms. McKenna asserts that "she was not given the benefit of the medical leave that she requested."

Ms. McKenna offers nothing to support failure to engage in interactive process or to accommodate. The ninth claim essentially alleges a termination-based complaint and fails to substantiate elements of interactive process and accommodation claims. This Court construes Ms. McKenna's opposition comments as her concession that she lacks facts to support interactive process and accommodation claims to warrant the ninth claim's dismissal.

### **FEHA Disability Discrimination**

The FAC's (tenth) disability discrimination claim alleges that Kaiser discharged her "in the first few days of a medical leave" and prior to discharge, reduced her hours but increased her workload, removed her job responsibilities, and attempted to embarrass her publicly. The claim identifies "Ms. McKenna's history of having a medical condition [as] a motivating reason for the discharge."

California Government Code section 12940(a) ("section 12940(a)") deems unlawful: "For an

1  employer, because of . . . physical disability, mental disability, medical condition . . . to discharge the

2  person from employment . . . or to discriminate against the person in compensation or in terms,

3  conditions, or privileges of employment."

4       Defendants challenge the FAC's absence of facts to support Kaiser's disability discrimination

5  liability.

6       Elements of a prima facie case of disability discrimination are that the plaintiff:

7      1.     Suffers from a disability;

8      2.     Is otherwise qualified to perform his/her job; and

9      3.     Was subjected to adverse employment action because of the disability.

10  *Faust v. California Portland Cement Co.*, 150 Cal.App.4th 864, 886, 58 Cal.Rptr.3d 729 (2007);

11  *Brundage v. Hahn*, 57 Cal.App.4th 228, 236, 66 Cal.Rptr.2d 830, 835 (1997); *see McDonnell Douglas*

12  *Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973);*Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891

13  (9th Cir. 1994); *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987), *cert. denied*,

14  484 U.S. 1047, 108 S.Ct. 785 (1988).

15       Defendants attack the FAC's limited allegations that Ms. McKenna suffered from a disability

16  since May 2004, made leave requests which were granted, and was subject to discrimination.

17  Defendants point to the FAC's allegations of granted leave to undercut claims of disability

18  discrimination.  Defendants conclude that the FAC provides no factual support that Kaiser discriminated

19  against Ms. McKenna.

20       Similar to her position as to the FAC's ninth claim, Ms. McKenna bases the disability

21  discrimination claim on her termination during medical leave.  Again, Ms. McKenna offers nothing to

22  support a FEHA disability discrimination claim.  She articulates a termination-based complaint and fails

23  to substantiate prima facie elements of disability discrimination.  As best, the FAC is vague as to her

24  alleged disability and fails to identify it precisely.  Ms. McKenna's termination during medical leave

25  fails to establish that her alleged disability contributed to her termination.  This Court construes Ms.

26  McKenna's opposition comments as her concession that she lacks facts to support disability

27  discrimination to warrant the tenth claim's dismissal.

28  / / /

**Retaliation**

The FAC's (eleventh) retaliation claim references California Labor Code section 6310 ("section 6310") and FEHA and alleges:

> Ms. McKenna's activities were legally protected and were a motivating factor for Kaiser's decisions to increase Ms. McKenna's hours, disciplining her for reporting illegal and, or inappropriate conduct, and discharging Ms. McKenna. . . . Kaiser failed to take reasonable steps to prevent harassment, discrimination and retaliation based on Ms. McKenna's medical condition and physical disability. . . . Kaiser retaliated against Ms. McKenna after she: became a Union Steward; complained about workplace safety . . .; and for engaging in lawful off duty conduct.

### Administrative Exhaustion

Section 6310 prohibits discharge or discrimination against an employee who "[m]ade any oral or written complaint to the division,[6] other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative."

Defendants challenge the FAC's lack of allegations that Ms. McKenna exhausted CBA grievance procedures. Ms. McKenna notes that a section 6310 claim does not require administrative exhaustion in that California Labor Code section 6312 provides: "Any employee who believes that he or she has been discharged or otherwise discriminated against by any person in violation of Section 6310 or 6311 may file a complaint with the Labor Commissioner pursuant to Section 98.7." Ms. McKenna is correct that administrative exhaustion is not required for a section 6310 claim. *See Cabesuela v. Browning-Ferris Industries of California, Inc.,* 68 Cal.App.4th 101, 109, 80 Cal.Rptr.2d 60 (1998) ("We also reject defendants' claim that plaintiff holds no direct right of action under section 6310.") The FAC's section 6310 claim is not subject to an administrative exhaustion defense.

### FEHA Retaliation

Defendants contend that the FAC lacks a viable FEHA retaliation claim.

California Government Code section 12940(h) renders unlawful for an employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices

---

[6]     "Division" refers to the Division of Labor Law Enforcement of the California Department of Industrial Relations.

forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." California Government Code section 12940(h) "incorporates other unlawful employment practices defined in other parts of section 12940, and forbids retaliation against anyone opposing any such unlawful employment practice." *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 1164, 72 Cal.Rptr.3d 624 (2008).

To make out a retaliation prima facie case, a plaintiff must demonstrate that:

1.     He/she engaged in protected activity;

2.     He/she suffered an adverse employment action; and

3.     There was a causal link between his/her activity and the employment action.

*Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-1066 (9th Cir. 2003); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1042, 116 P.3d 1123 (2005); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 615, 262 Cal.Rptr. 842 (1989).

"To establish causation, the plaintiff must show by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the adverse employment decision and that but for such activity the decision would not have been made." *Kraus v. Presidio Trust Facilities Division/Residential Management Branch*, 704 F.Supp.2d 859, 863 (N.D. Cal. 2010) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir.2002)).

Defendants fault the FAC's limited allegations that Ms. McKenna advised Kaiser of her medical condition and physical disabilities and was terminated.  Defendants point to the absence of facts to support a causal link between Ms. McKenna's protected activity and adverse employment action, including increased work, discipline and termination.  Ms. McKenna responds that "her medical condition and need for medical leave was [sic] a factor in her termination less then [sic] one week into a 6-month medical leave had already begun."

The FAC identifies Ms. McKenna's protected activities as her becoming a union steward, complaining about workplace safety, and engaging in lawful off duty conduct.  The FAC identifies adverse employment action as increased workload, discipline for reporting coworkers, and termination. The retaliation claim concludes that "Ms. McKenna's request for medical leave was a motivating reason for discharging her."  The FAC bundles the alleged protected activities with termination due to medical

leave.  The FAC fails to demonstrate a causal connection between becoming a union steward, work safety complaints, and off duty conduct and termination.  Such protected activity is separate from a medical leave request and corresponding termination.  The retaliation claim essentially alleges a wrongful termination claim, not a retaliation claim.  As such, a FEHA retaliation claim is subject to dismissal given the absence of a causal connection between protected activity and adverse employment action.

### FEHA Hostile Work Environment

The FAC's (twelfth) hostile work environment claim alleges that Ms. McKenna was subjected to unwanted harassing conduct because of her "disabling medical conditions (chronic kidney stones and female issues), which required her to take intermittent leaves of absence from work."  The hostile work environment claim accuses Ms. Hanrahan of singling out Ms. McKenna for "harassing conduct" since Ms. McKenna dated Ms. Hanrahan's future husband.

Section 12940(j)(1) renders unlawful "[f]or an employer . . . or any other person because of . . . physical disability, mental disability, medical condition . . . to harass an employee . . .  Harassment of an employee . . .  by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. . . . An entity shall take all reasonable steps to prevent harassment from occurring."

Not all workplace conduct which may be described as harassment affects a term, condition, or privilege of employment.  *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986) (addressing sexual harassment claims under Title VII)[7]; *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal.4th 121, 129-130, 87 Cal.Rptr.2d 132, 138 (1999), *cert. denied*, 529 U.S. 1138, 120 S.Ct. 2029 (2000).  "To prevail on a hostile work environment claim under California's FEHA, an employee must show that the harassing conduct was 'severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees . . . .'"

---

[7]    Federal and California courts rely on federal interpretations of Title VII to interpret analogous FEHA provisions which prohibit unlawful discrimination.  *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Clark v. Claremont Univ. Ctr. & Graduate Sch.*, 6 Cal.App.4th 639, 662, 8 Cal.Rptr.2d 151 (1992).

*Hughes v. Pair*, 46 Cal.4th 1035, 1043, 209 P.3d 963 (2009) (quoting *Miller v. Department of Corrections*, 36 Cal.4th 446, 462, 115 P.3d 77 (2005)); *see Meritor Savings*, 477 U.S. at 67, 106 S.Ct. 2399 (harassment must be sufficiently severe and pervasive "to alter the conditions of [the victim's] employment and create an abusive working environment"); *Fisher*, 214 Cal.App.3d at 608, 262 Cal.Rptr. 842.

"[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Reno v. Baird*, 18 Cal.4th 640, 646-647, 76 Cal.Rptr.2d 499 (1998).

"The plaintiff must prove that the defendant's conduct would have interfered with a reasonable employee's work performance and would have seriously affected the psychological well-being of a reasonable employee and that she was actually offended." *Fisher*, 214 Cal.App.3d at 609-610, 262 Cal.Rptr. 842.  If the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no actionable harassment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-371 (1993).

"Harassment cannot be occasional, isolated, sporadic, or trivial[;] rather the plaintiff must show a concerted pattern of harassment of a repeated, routine or a generalized nature." *Fisher*, 214 Cal.App.3d at 610, 262 Cal.Rptr. 842.  A plaintiff must prove more than a few isolated incidents.  *See Gilbert v. City of Little Rock*, 722 F.2d 1390, 1394 (8th Cir. 1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2347 (1984); *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2nd Cir. 1986).  "When the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, the law is violated." *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 409, 27 Cal.Rptr.2d 457 (1994) (internal quotations and citations omitted).

The Ninth Circuit uses "a totality of the circumstances test to determine whether a plaintiff's allegations make out a colorable claim of hostile work environment." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000).  Factors considered include frequency, severity and level of interference

1   with work performance and whether discriminatory conduct is physically threatening or humiliating or

2   a mere offensive utterance.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788, 118 S.Ct. 2275

3   (1998); *Brooks*, 229 F.3d at 924 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367); *Lappin v. Laidlaw*

4   *Transit, Inc.*, 179 F.Supp.2d 1111 (N.D. Cal. 2001).

5         Defendants point to the FAC's absence of facts of pervasive or severe actions to substantiate

6   harassment.  The FAC identifies the harassing conduct as increased workload, proximity to the second

7   worker, and reprimands for whistle blowing.  The FAC fails to connect such harassment to Ms.

8   McKenna's physical disability or medical condition, as required by section 12940(j)(1).  The FAC lacks

9   facts to substantiate increased workload in that the FAC fails to describe Ms. McKenna's duties and how

10   they increased.  The FAC fails to establish how proximity to the second coworker was harassing,

11   especially given the lack of allegations that Ms. McKenna complained about such proximity and that

12   defendants failed to act on such complaints.  The FAC lacks allegations of pervasive discipline and

13   harassment and refers to no more than three reprimands during 2009.  The FAC raises inferences that

14   Ms. McKenna contributed to the circumstances to warrant the reprimands.

15         Moreover, the FAC fails to allege facts to identify alleged harassers.  The hostile work

16   environment claim fails in the absence of facts of interference with a reasonable employee's job

17   performance and harassment of Ms. McKenna in connection with her physical disability or medical

18   condition.  Ms. McKenna's resort to acquiring supporting facts through discovery is unavailing given

19   that she would possess knowledge of harassment if it existed.  The FAC's hostile work environment

20   claim is subject to dismissal.

21   **FEHA Failure To Prevent Harassment**

22         The FAC's (thirteenth) failure to prevent harassment claim alleges:

23         Ms. McKenna was subjected to discrimination and harassment because she
       suffered from a medical condition, filed grievances and a complaint with the Department
24     of Fair Employment and Housing. . . . Defendant failed to take reasonable steps to
       prevent the discrimination, harassment and retaliation.

25

26         California Government Code section 12940(k) deems unlawful an employer's failure "to take

27   all reasonable steps necessary to prevent discrimination and harassment from occurring."  Nonetheless,

28   "[e]mployers should not be held liable to employees for failure to take necessary steps to prevent such

26

1    conduct, except where the actions took place and were not prevented." *Trujillo v. North County Transit*

2    *Dist.*, 63 Cal.App.4th 280, 289, 73 Cal.Rptr.2d 596 (1998).

3           The Ninth Circuit applies a "reasonableness" approach to employer remedies to stop harassment:

4           We too believe that remedies should be "reasonably calculated to end the harassment."
             *Katz*, 709 F.2d at 256. An employer's remedy should persuade individual harassers to
5           discontinue unlawful conduct. We do not think that all harassment warrants dismissal,
             *Barrett*, 726 F.2d at 427; rather, remedies should be "assessed proportionately to the
6           seriousness of the offense." *Dornhecker v. Malibu Grand Prix Corp.*, 828 F.2d 307, 309
             (5th Cir.1987). Employers should impose sufficient penalties to assure a workplace free
7           from . . . harassment. In essence, then, we think that the reasonableness of an employer's
             remedy will depend on its ability to stop harassment by the person who engaged in
8           harassment.  In evaluating the adequacy of the remedy, the court may also take into
             account the remedy's ability to persuade potential harassers to refrain from unlawful
9           conduct.

10   *Ellison v. Brady,* 924 F.2d 872, 882 (9th Cir. 1991).

11          Defendants fault the FAC's lack of facts to support discrimination and harassment and in turn

12   failure to prevent discrimination and harassment.  The FAC alleges Ms. McKenna was harassed because

13   she suffered a medical condition, filed grievances and a DFEH charge, and dated Ms. Hanrahan's future

14   husband.  The FAC identifies alleged harassment as increased workload, proximity to the second

15   coworker, reprimands for whistle blowing, and discharge based on pretext.  As noted above, the FAC

16   fails to allege facts to establish harassment and to connect alleged harassment to Ms. McKenna's medical

17   condition, protected activities, and dating Ms. Hanrahan's future husband.  In the absence of harassment,

18   defendants are not subject to a failure to prevent harassment claim.  Again, Ms. McKenna's resort to

19   acquiring supporting facts through discovery is unavailing given that she would possess knowledge of

20   harassment if it existed.

21                          **Wrongful Discharge For Off-Duty Conduct**

22          The FAC's (fourteenth) wrongful discharge for off-duty conduct claim alleges that Ms. McKenna

23   "was harassed, discriminated against, and experienced a hostile work environment and ultimately

24   terminated as a result of her having dated Defendant's Hanrahan's husband."

25          California Labor Code sections 98.6 and 96(k) prohibit employment termination or

26   discrimination  based on engaging in "lawful conduct occurring during nonworking hours away from

27   the employer's premises."

28          Defendants challenge the FAC's absence of facts that Ms. McKenna was terminated for lawful

1   off-duty conduct.  Defendants fault the FAC's reliance on Ms. McKenna's dating Ms. Hanrahan's

2   husband prior to his marriage to Ms. Hanrahan and lack of facts "that her termination was a result of this

3   one date."  Defendants point to the FAC's contradictory allegations that Ms. McKenna was terminated

4   as a result of medical leave and attendance.  Defendants criticize the claim's mere conclusions without

5   supporting facts as well as the lack of facts that Ms. Hanrahan participated in the decision to terminate

6   Ms. McKenna.

7        Defendants raise valid points.  The FAC lacks facts to support Ms. McKenna's assertion that Ms.

8   Hanrahan directed Ms. McKenna's adverse employment actions based on Ms. McKenna's having dated

9   Ms. Hanrahan's future husband.  The FAC merely alleges Ms. McKenna's date and purported ensuing

10  adverse action.  No facts connect Ms. Hanrahan to the adverse action.  The FAC offers mere speculation

11  that Ms. Hanrahan caused Ms. McKenna's adverse action out of spite for Ms. McKenna's single date

12  with Ms. Hanrahan's future husband.  Ms. McKenna offers no meaningful support for the wrongful

13  discharge for off-duty conduct claim.

14                    **Failure To Provide Safe And Healthful Workplace**

15       The FAC's (fifteenth) failure to provide safe and healthful workplace claim alleges that by

16  returning the second coworker "to a workstation near Ms. McKenna," defendants "failed to provide a

17  safe and healthful work environment free from intimidation and threats of violence.

18       California Labor Code section 6400(a) ("section 6400(a)") provides: "Every employer shall

19  furnish employment and a place of employment that is safe and healthful for the employees therein."

20  Defendants argues that a section 6400(a) claim fails in absence of alleged facts that Ms. McKenna was

21  threatened by the second coworker, feared for her safety and complained about the second coworker, and

22  that defendants ignored her complaints.

23       To support a section 6400(a) claim, Ms. McKenna rests on FAC allegations that on August 4,

24  2009, she informed her supervisors that she wanted to file a formal complaint, management failed to

25  honor her workload complaints, and on September 3, 2009, she filed a workers' compensation claim for

26  "a stress related injury."

27       The FAC lacks facts to support a section 6400(a) claim.  The FAC fails to identify unsafe or

28  unhealthful conditions.  The FAC suggests at most that the coworker directed threats toward supervisors

and merely shared them with Ms. McKenna.  The FAC fails to indicate the basis for Ms. McKenna's desire to file a formal complaint and raises inferences that such basis was the second coworker's having filed a sexual harassment complaint against Ms. McKenna.  There are no allegations that defendants prevented Ms. McKenna to file a formal complaint.  The FAC suggests she simply did not do so.

The FAC lacks facts to explain how Ms. McKenna's workload contributed to an unsafe or unhealthy workplace.  As to the source of Ms. McKenna's stress, the FAC merely indicates "[a]ll of these events and more" to suggest that non-workplace matters contributed to Ms. McKenna's stress.  The FAC's facts construed in Ms. McKenna's favor fail to support a section 6400(a) claim to warrant dismissal.

### Freedom From Violence And Intimidation

The FAC's (sixteenth) breach of California Civil Code sections 51.7(a) ("section 51.7(a)") and 52 ("section 52") claim alleges: "Ms. McKenna was not free from intimidation by threat of violence because of her whistleblower activities against the Second Co-Worker."

Section 51.7(a) provides freedom from violence, intimidation or threats based on specified characteristics "or position in a labor dispute."  California Civil Code section 52(b) outlines penalties for section 51.7(a) penalties. California Civil Code section 51(b) ("section 51(b)") outlines the protected characteristics of "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation."

The elements of a section 51.7 claim are: (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's protected characteristic; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1167 (N.D. Cal. 2009).

The sections 51.7 and 52 claim is premised on Ms. McKenna's whistle blower activities, which is not a characteristic listed in section 51(b).  The FAC lacks facts that Ms. McKenna's whistle blowing as to the second coworker qualifies as a position in a labor dispute.

As discussed above, there are no alleged facts that the second coworker threatened or committed violent acts against Ms. McKenna based on a protected characteristic.  The FAC merely alleges that the second coworker glared at Ms. McKenna and made machines unavailable to Ms. McKenna.  No facts

connect such conduct to a protected characteristic.  The FAC alleges that an unknown employee attributes to the second coworker a comment that the second coworker as "going to get you fucking bitches."  Ms. McKenna relies on hearsay on hearsay to support a purported threat with no connection to a protected characteristic.  The FAC alleges only that the threats were directed toward the second coworker's supervisor, not Ms. McKenna.  There are no alleged facts that defendants were motivated to harm Ms. McKenna due to a protected characteristic or position in a labor dispute to warrant the claim's dismissal.

### Attempt To Amend

Ms. McKenna suggests that she should be granted an opportunity to file another amended complaint.  Ms. McKenna ignores that she already proceeds on an amended complaint and that she has made little attempt to correct deficiencies which defendants raised in their original motion to dismiss.  Ms. McKenna offers neither purported facts to cure the FAC's severe deficiencies nor meaningful opposition to most of defendants' challenges.  Ms. McKenna fails to articulate what further facts she could allege or why she did not allege them in either her original complaint or the FAC.  Ms. McKenna offers nothing to justify another attempt to amend.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DENIES dismissal as to Kaiser of the FAC's (first) breach of contract and (eleventh) California Labor Code section 6310 claims;

2. DISMISSES with prejudice as to Ms. Hanrahan the FAC's (first) breach of contract and (third) NLRA and California Labor Code § 2922 claims;

3. DISMISSES with prejudice as to defendants the FAC's (second) implied covenant, (sixth) IIED, (seventh) NIED, (ninth) interactive process/accommodation, (tenth) disability discrimination, (eleventh) FEHA retaliation, (twelfth) hostile work environment claim, (thirteenth) failure to prevent hostile work environment, (fourteenth) wrongful discharge for off-duty conduct, (fifteenth) safe and healthful workplace, and (sixteen) freedom from violence and intimidation claims;

4. DIRECTS the clerk to enter judgment in favor of defendant Michelle Hanrahan and

1    against plaintiff Elizabeth McKenna in that no claims remain against Ms. Hanrahan,

2    there is no just reason to delay to enter such judgment given that the Ms. McKenna's

3    dismissed claims against Ms. Hanrahan and Ms. Hanrahan's alleged liability are clear

4    and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b);

5    and

6    5.    ORDERS defendants, no later than August 24, 2012, to file an answer to the FAC's

7          remaining claims.

8    Based on this Court's orders, the FAC's remaining claims are limited to:

9    1.    The (first) breach of contract claim against Kaiser only;

10   2.    The (third) NLRA and California Labor Code § 2922 claim against Kaiser only;

11   3.    The (fourth) Family and Medical Leave Act claim against Kaiser;

12   4.    The (fifth) violation of CFRA claim against Kaiser;

13   5.    The (eighth) wrongful discharge in violation of public policy claim against Kaiser; and

14   6.    The (eleventh) California Labor Code section 6310 claim only against Kaiser.

15   IT IS SO ORDERED.

16   **Dated:   August 9, 2012**                     /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE

31