**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELIZABETH MCKENNA<br><br>Plaintiff,<br><br>v.<br><br>THE PERMANENTE MEDICAL GROUP, INC., a California corporation; UNITED HEALTHCARE WORKERS—WEST; and MICHELLE HANRAHAN, an individual and DOES 1 through 25, inclusive,<br><br>Defendants. | 1:12-CV-00849 LJO GSA<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION (DOC. 43) |

## I. INTRODUCTION

This is an employment dispute between Defendant, The Permanente Medical Group ("TPMG" or "Defendant"), and Plaintiff Elizabeth McKenna, who was employed by TPMG from 1995 until her termination in late 2009. The operative First Amended Complaint ("FAC") originally contained seventeen claims against TPMG, Plaintiff's union, and one of Plaintiff's supervisors. (Doc. 11.) The union and Plaintiff's supervisor successfully moved to dismiss all claims against them (*see* Docs. 23 & 26), leaving only the following claims against TPMG:

- State common law breach of contract;
- Unfair labor practice in violation of Section 7 of the National Labor Relations Act;
- Interference with medical leave under the federal Family Medical Leave Act and the California Family Rights Act;
- Wrongful discharge in violation of public policy; and
- Retaliation for making complaints of unsafe working conditions in violation of California Labor Code § 6310.

Before the Court for decision is TPMG's motion for summary judgment or in the alternative summary adjudication as to all the remaining claims. (Doc. 43.) The parties filed a joint statement of

1

facts ("JSF"). (Doc. 43-3.) Defendant filed a separate statement of undisputed fact ("SUF") (Doc. 43-2), along with voluminous supporting documents. Plaintiff filed an opposition (Doc. 45), along with a separate statement of undisputed fact (Doc. 45-1[1]), evidentiary objections (Doc. 45-2), a response to Defendant's SUF (Doc. 45-3), and equally voluminous supporting documents. Defendant replied, filing responses and objections to Plaintiff's documents. (Doc. 49.)[2]

The Court notes that both sides have failed to present their arguments at a level expected of officers of the Court. Among other things, Defendant's brief fails to discuss clearly applicable, basic legal standards, while Plaintiff's briefing repeatedly fails to direct the Court to relevant evidence supporting Plaintiff's claims. In addition, Plaintiff has failed to attach to her opposition her own declaration, so it cannot be and has not been considered by the Court. This is one of the busiest federal Courts in the country. Further sanctionable conduct of this nature will not be tolerated.

This motion was originally set for hearing on July 3, 2013, but the hearing was vacated and the matter submitted for decision on the papers pursuant to Local Rule 230(g). (Doc. 47.)

## II. BACKGROUND

Plaintiff was hired as a Medical Assistant by TPMG on December 19, 1995. (JSF #1.) Medical Assistants interview patients, measure vitals, and otherwise assist clinicians with the care of patients. (Def. Ex. K (Medical Assistant Job Description).) Candie Castellanos was Plaintiff's direct supervisor from September 2007 until Plaintiff's termination. (Hanrahan Decl. (Def. Ex. Z) ¶¶ 1, 3). Ms. Castellanos reported to the Director of Adult Medicine, Michelle Hanrahan. (*Id.*)

Each year, TPMG provided training to Plaintiff which included review of TPMG's Principles of Responsibility ("POR") and Code of Conduct. (*Id.* at ¶ 6; McKenna Depo. at 263:15-264:16.) The POR provides guidance about behavior in the workplace. (Def. Ex. G (POR).) It xplains that employees are

---

[1] Because Plaintiff's separate statement continues the numbering of Defendant's separate statement, both will be referenced as "SUF."
[2] It is not this Court's practice to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted. Objections that were material and meritorious were sustained. *See Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n. 1 (C.D. Cal. 2010) (noting that it is often unnecessary and impractical for a court to methodically scrutinize and give a full analysis of each evidentiary objection on a motion for summary judgment; *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–22 (E.D. Cal. 2006) (same).

required to "report any unsafe conditions or security-related issues immediately" to the employee's "Chief, immediate supervisor, or safety manager." (*Id*. at 29.) The POR also addresses TPMG's policy against workplace harassment. (*Id*. at 28.)

TPMG has a policy of investigating employee complaints regarding health and safety issues, patient care, sexual harassment, and other serious matters. (Henderson Decl. (Def. Ex. AA) at ¶ 4.) TPMG employs Employee Labor Relations Consultants ("ELRC") to investigate such matters. (*Id*. at ¶¶ 1-4.) At all relevant times, Forrest Henderson was the ELRC assigned to the TPMG facility where Plaintiff was employed. (*Id*. at ¶2.) One other ELRC, Barbara Maselli, also served the Fresno area. (*Id*.)

Plaintiff was a member of the SIEU-UHW, a union that entered into a collective bargaining agreement ("CBA") with TPMG.  (SUF #1.) Plaintiff became a union steward on or about September 2009. (JSF #26.)

Starting in 2003, Plaintiff requested and was granted leave under the FMLA in connection with kidney stones. (SUF #6.) In 2007, Plaintiff took 63 days of FMLA leave. (Hanrahan Decl. ¶ 13.) In 2008, Plaintiff took 17 days of FMLA leave, followed by a six month leave of absence. (*Id*.) In 2009, Plaintiff was not re-approved for FMLA leave until late October, at which time she was again granted permission to use FMLA leave intermittently, for up to seven (7) days each month. (*Id*. at ¶14.) This was made retroactive to October 1, 2009. (*Id*.)

Plaintiff was disciplined for attendance issues in 2006 (verbal warning); July 2007 (written warning); October 2007 (one day suspension); and May 2008 (coaching). (*Id*. at ¶16.) Plaintiff was also written up for attendance issues in April 2009 and issued a one day suspension. (*Id*. at ¶17.)

On June 3, 2009, a co-worker raised her voice toward Plaintiff and others in the workplace. (JSF #2.) Plaintiff submitted a letter to Candie Castellanos regarding the incident. (*Id*.) The letter indicated, among other things, Plaintiff's belief that this co-worker came to work impaired by drugs. (JSF #3.) TPMG initiated an investigation against this co-worker based upon Plaintiff's allegation of drug use. (JSF #4.) The investigation was ultimately dismissed as unsubstantiated. (Henderson Decl. ¶ 6.) Plaintiff was interviewed in connection with the investigation. Based upon this interview, the investigator

concluded that Plaintiff failed to follow the POR's requirement that she immediately report her suspicion of the co-worker's drug use to her immediate supervisor. (*Id.* at ¶ 9.) Plaintiff was suspended for two days because of this violation. (*Id.* at ¶10.)[3]

On July 8, 2009, Plaintiff reported to Ms. Castellanos and Security that another co-worker, Michael Castillo, allegedly waited at the bottom of the stairs for Plaintiff after he got off work and showed Plaintiff a baseball bat and a knife stored in his car. (JSF #7.) Plaintiff reported overhearing Castillo make what Plaintiff believed to be threatening comments about Ms. Castellanos. (*Id.*) Castillo was placed on administrative leave and an investigation was opened. (Hanrahan Decl. ¶ 19; Henderson Decl. ¶ 12.) Castillo denied the charges. (Henderson Decl. ¶ 12.) Surveillance footage of the area in which Plaintiff alleged Castillo waited for her did not corroborate Plaintiff's version of the events. (*Id.*) TPMG ultimately concluded that although Castillo may have made some inappropriate comments at work, Plaintiff's allegation that Castillo approached her in the stairwell and showed her weapons could not be substantiated. (*Id.*) Castillo was given a written warning for making inappropriate comments that others found offensive. (Hanrahan Decl. ¶ 20.)

During the investigation into Castillo's conduct, Castillo complained that Plaintiff had engaged in inappropriate conduct in the workplace. (Henderson Decl. ¶ 14.) TPMG investigated the allegation. (*Id.*) Castillo asserted Plaintiff behaved in a manner that made him uncomfortable. (Maselli Depo. 54:8-16.)[4] TPMG investigator Maselli concluded that Plaintiff violated TPMG's sexual harassment policy and recommended she receive training. (Def. Ex. M.) On November 2, 2009, TPMG issued a notice of disciplinary action directing Plaintiff to attend training and indicating this was a "final warning." (JSF #3.)

On November 10, 2009, Plaintiff met Ms. Castellanos to discuss attendance. (Hanrahan Decl. ¶ 22; McKenna Depo 242:2-17.) Thereafter, Ms. Castellanos met with Ms. Hanrahan to discuss Plaintiff.

---

[3] Plaintiff's union filed a grievance on her behalf, which was denied. (Henderson Decl. ¶ 10.) The union had the option to appeal that denial, but did not. (*Id.*)
[4] Defendant asserts that another co-worker also indicated Plaintiff acted in a manner that made him uncomfortable, but the present record reflects dispute as to this asserted fact. (*See* Pltf. Resp. to SUF ##22.)

4

(Hanrahan Decl. ¶ 22.) Ms. Hanrahan sought input from human resources and others who, collectively, made the decision to terminate Plaintiff. (*Id*.) A follow up meeting was scheduled for November 25, 2009. (*Id*. at ¶ 23.) Ms. McKenna cancelled the meeting and rescheduled it for December 1, 2009. (*Id*.) On December 1, 2009, Plaintiff left work early using her previously-approved FMLA leave. (*Id*. at ¶ 24.) The next day, Plaintiff took a full day of leave for the same reason. (*Id*.)

TPMG mailed a termination notice to Plaintiff on December 3, 2009. (*Id*.) The notice focuses on plaintiff's "absenteeism" but also mentions her recent discipline for violating the POR and TPMG's sexual harassment policy. (Def. Ex. R. (Termination Notice).) Plaintiff's union filed a grievance in connection with the termination, but did not exhaust all available remedies. (JSF #25; McKenna Depo. 628:5-24; Def. Ex. W.)

### III. **STANDARD OF DECISION**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence to support the non-moving party's case." *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material

facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## IV. DISCUSSION

**A.     Preemption of State Law Breach of Contract Claim**

Section 301 of the Labor Management Relations Act ("LMRA") establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). When a suit is brought for breach of a collective bargaining agreement ("CBA"), federal law governs under the LMRA, completely preempting any state cause of action for that breach. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (a suit alleging a violation of a labor contract "must be brought under § 301 and be resolved by reference to federal law").

In this case, Plaintiff's first cause of action is for breach of contract with regard to several provisions of the CBA between Defendant and Plaintiff's union. (FAC ¶¶ 40-54.) Plaintiff is correct that "suits for violations of collective bargaining contracts may be brought in the federal courts." (Doc. 45, 15:4). However, those claims must be brought under LMRA § 301. Once a state law claim is preempted by § 301, the Court either must treat it as a § 301 claim or dismiss it as preempted by federal law. *Allis–Chalmers Corp.,* 471 U.S. at 220. Even if the Court were to convert Plaintiff's claim to one under § 301,

it would fail as a matter of law. Section 301 requires an employee seeking to vindicate her rights under a CBA first to attempt to exhaust any mandatory grievance procedures in the CBA. *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 985-86 (9th Cir. 2007). Here, it is undisputed that Plaintiff's union declined to exhaust the relevant grievance procedures. (Def. Ex. W.) An employee need not meet this exhaustion requirement if he demonstrates that the union breached its duty of fair representation, *Vaca v. Sipes*, 386 U.S. 171, 184 (1967), but Plaintiff's breach of the duty of fair representation claim has been dismissed (Doc. 23 at 13-16).

Defendant's motion for summary judgment as to Plaintiff's breach of contract claim is GRANTED.

B.      **National Labor Relations Act Claim.**

Plaintiff's Third Cause of Action alleges that Defendant violated the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, by subjecting her to adverse employment actions, including termination, shortly after Plaintiff became a Union Steward responsible for "assist[ing] other employees in asserting their union rights." (FAC ¶71.)[5] Among other things, NLRA § 7 protects an employee's right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection…." 29 U.S.C. § 157. A violation of these rights constitutes an "unfair labor practice." 29 U.S.C. § 158.

Defendant moves for summary judgment on the ground that this court does not have jurisdiction to hear such claims. "When an activity is arguably subject to [§] 7 or [§] 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959). Plaintiff offers no resistance to Defendant's motion for summary judgment.

---

[5] The Third Cause of Action contains numerous other allegations, none of which appears to concern the NLRA. Among other things, this claim mentions California Labor Code § 2922, which sets forth the foundational rule that California employees are, by default, at will employees. The Court cannot fathom how this would amount to an independent claim, and Plaintiff does not mention § 2292 in her opposition.

Defendant's motion for summary judgment as to Plaintiff's NLRA claim is GRANTED for want of jurisdiction.

**C.     FMLA Claim – Interference With Substantive Rights.**

The Fourth Cause of Action is brought under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq*. Neither party discusses the applicable legal standards in anything other than a totally cursory manner.

"The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for a family members who are ill, or to care for new babies." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001) (citing 29 U.S.C. § 2612).

> Congress recognized that, in an age when all the adults in many families are in the work force, employers' leave policies often do not permit employees reasonably to balance their family obligations and their work life. The result, Congress determined, is "a heavy burden on families, employees, employers and the broader society." S. Rep. No. 103–3 at 4, 103d Cong., 2d Sess. (1993). As for employees' own serious health conditions, Congress found that employees' lack of job security during serious illnesses that required them to miss work is particularly devastating to single-parent families and to families which need two incomes to make ends meet. *Id*. at 11–12. As Congress concluded, "it is unfair for an employee to be terminated when he or she is struck with a serious illness and is not capable of working." *Id*. at 11.

*Bachelder*, 259 F.3d at 1119.

The FMLA entitles covered employees to up to twelve weeks of leave each year for their own serious illnesses or to care for family members, and guarantees them reinstatement after exercising their leave rights. 29 U.S.C. §§ 2612(a)(1), 2614(a)(1). "The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder*, 259 F.3d at 1122 (citing 29 U.S.C. §§ 2612(a), 2614(a)). It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1). FMLA regulations explain: "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. §

825.220(c).

The FMLA also contains anti-retaliation provisions that prohibit, among other things, "discriminat[ion] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). However, the Ninth Circuit only applies the FMLA retaliation provision where an employee is "punished for opposing unlawful practices by the employer, the issue then becomes one of discrimination and retaliation." *Xin Liu v. Amway Corp.,* 347 F.3d 1125, 1136 (9th Cir. 2003). Plaintiff has made no such allegation in this case. Instead, she alleges her FMLA leave was factored into the decision to terminate her.[6] Such claims are evaluated as interference claims. *Id*.

The familiar burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), does not apply to FMLA interference claims. *Bachelder*, 259 F.3d at 1125. This is because "29 C.F.R. 825.220(c) plainly prohibits the use of FMLA-protected leave as a negative factor in an employment decision." *Id*. "In order to prevail on [such a] claim, therefore, [a plaintiff] need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Id*. "She can prove this claim, as one might any ordinary statutory claim, by using either direct or circumstantial evidence, or both." *Id*.

Plaintiff took 63 days of FMLA leave in 2007. In 2008, she took 17 days of FMLA leave, followed by a medical leave of absence that lasted from May 5, 2008 until December 8, 2008. (Hanrahan Decl. ¶ 13.) However, it appears to be undisputed that Plaintiff did not take any FMLA leave during the first three quarters of 2009.[7] It was not until on or about October 23, 2009, that Plaintiff requested and was granted intermittent leave under the FMLA. (*Id*. ¶ 14.) She was approved to use FMLA leave a maximum of 7 times per month for one calendar year. (*Id*.) There is no dispute that Plaintiff suffered from a "serious health condition," 29 U.S.C. § 2612(a)(1)(D), that qualified her for FMLA leave, provided she met the other statutory requirements.

---

[6] The FAC also alleges that Defendant denied Plaintiff's requests for FMLA leave, but this theory of liability is not mentioned in Plaintiff's opposition to Defendant's motion for summary judgment.

[7] Defendant asserts Plaintiff was ineligible for FMLA leave between December 2008 and October 1, 2009 because she had not worked 1,250 hours in the prior twelve (12) months. (SUF #8.) Although her eligibility for such leave is arguably disputed, there is no suggestion that she requested or took any FMLA leave prior to October 2009.

It is undisputed that Plaintiff's termination was based, at least in part, on "excessive absenteeism." (Def. Ex. R.) The December 2, 2009 termination notice sent to Plaintiff under a December 3, 2009, cover letter focuses on an "obvious pattern that shows [Plaintiff] routinely called in sick to extend [her] approved time off." (*Id.* at p. 1 of 3.) The termination notice relies upon three instances of absenteeism, July 24, 2009, August 4, 2009, and September 4, 2009,[8] as well as three instances of tardiness, occurring on July 6, 2004 (35 minutes), August 19, 2009 (three minutes), and September 21, 2009 (one minute). (*Id.*) Earlier in 2009, Plaintiff had been suspended for excessive absenteeism by a notice mentioning absences on January 23, February 17, February 27, March 11, and March 18, 2009. (Def. Ex. P.)

On its face, the December 2, 2009 termination notice does not mention any FMLA-covered absences; instead it concerns only absences that took place during the first three quarters of 2009. Plaintiff suggests that these absences should have been covered by the FMLA because Defendant miscalculated her eligibility for and remaining FMLA leave on this and other occasions. (Doc. 45 at 17.) However, she provides no explanation as to how Defendants erred or how her FMLA leave should have been calculated. This is a failure of proof. Alternatively, Plaintiff complains that even if those absences were not covered by FMLA, she should have been permitted to use sick leave to cover those absences. However, Plaintiff points to no policy that demonstrates her entitlement to utilize sick leave without any conditions. Defendant determined she was abusing her sick leave. That is not a matter for resolution under the FMLA. *Bachelder*, 259 F.3d at 1125 ("The FMLA is not implicated and does not protect an employee against disciplinary action based upon absences if those absences are <u>not</u> taken for one of the reasons enumerated in the Act.") (internal citation and quotation omitted) (emphasis added).

---

[8] Plaintiff highlights that the termination notice states that these absences were "covered under protected time" (Def. Ex. R), suggesting that this is direct evidence that her termination was based upon FMLA protected time (*see* Doc. 45 at 11). But, the head of Plaintiff's department, Michelle Hanrahan, who approved the termination document, explained that this was a typographical error (Pltf. Ex. D), which explanation is supported by all the available record evidence. Plaintiff suggests that this explanation is disputed because at her deposition Ms. Hanrahan could not recall the exact nature of any typographical error in the termination document. (*See* SUF #33.) This is unpersuasive, as Plaintiff's counsel did not show the document to Ms. Hanrahan at the deposition. (Pltf. Ex. E, Hanrahan Depo. 231:9-18.)

Plaintiff was disciplined on other occasions for absenteeism. For example, an October 29, 2007[9] Notice of Disciplinary Action placed Plaintiff on suspension for "excessive absenteeism." That Notice indicated that Plaintiff took time off to care for a sick child (time that, according to the Notice, was not covered by the FMLA) and was out sick on five occasions after she had exhausted her FMLA and sick leave. (Def. Ex. O.) Plaintiff again complains that Defendant miscalculated her available leave, but fails to explain how Defendant erred or how her leave should have been calculated. She also indicates that Defendant's representatives advised her to "go off work and work with her doctor to not come back to[o] soon." (Doc. 45 at 9.) According to Plaintiff, this "caused Plaintiff to use up [] allocated FMLA leave more quickly than she otherwise would have which thereafter caused her to get in trouble for using her banked sick leave." (Pltf. Obj. to SUF #7.) Plaintiff ostensibly supports this assertion with her own declaration, which has not been presented to the Court. Even if it this assertion was supported by admissible evidence, it is irrelevant. Plaintiff has not alleged or asserted that Defendant acted improperly in connection with this advice. Plaintiff has failed to provide any evidence to support a finding that absences noted in the October 29, 2007 Notice were covered by the FMLA. Disciplining Plaintiff for absences not covered by the FMLA does not trigger the FMLA.[10]

The one fact tending to support Plaintiff's assertion that her FMLA leave was taken into consideration in the decision to terminate her is the timing of her termination relative to her approval for additional FMLA leave. Although the termination notice relies upon absences that predate October 2009, the termination notice is dated December 2, 2009. Defendants assert that the decision to terminate Plaintiff was made before November 25, 2009, (Def. Ex. U; Hanrahan Decl. (Def. Ex. Z), ¶¶ 22-23), prior to the first day on which Plaintiff <u>exercised</u> her recently re-approved intermittent FMLA leave. But, Defendants ignore the fact that Plaintiff was <u>approved</u> for such leave in late October 2009.

---

[9] Plaintiff also makes much of the fact that she did not receive this Notice until May 5, 2008. A cover letter attached to the Notice explains that it was forwarded to her at a later date because she was out on leave when the Notice issued. (Def. Ex. O.) Plaintiff has not shown that this delay prejudiced her in any way or is otherwise relevant to her claim.

[10] The Statement of Facts contained within Plaintiff's opposition, which is a confusing mixture of factual recitation and legal argument, also notes a March 10, 2008 Notice of Discipline and suggests this was punishment for taking intermittent FMLA leave. (Doc. 45 at 9.) The Court has reviewed this document, which is provided as Defendant's Exhibit N, and finds that it is totally unrelated to absenteeism. Instead, it discusses Plaintiff's substantive performance.

(Hanrahan Decl. ¶ 14.) Plaintiff was indisputably terminated within weeks of applying for and being granted the right to take intermittent FMLA leave.

Defendant attempts to explain the delay between the last tardy considered in her termination Notice (September 21, 2009) and the actual date of the Notice (December 2, 2009) by claiming that it made an "intentional decision" to resolve the POR and Sexual Harassment investigations prior to addressing her attendance. (*See* Pltf. Ex. D.)[11] However, a trier of fact could find the timing of Plaintiff's termination relative to her re-authorization for intermittent FMLA leave to be circumstantial evidence that her pattern of using FMLA leave was taken into consideration in the termination decision. Despite Defendant's protestations to the contrary, close temporal proximity between her renewed FMLA leave approval and her termination can provide supporting evidence of a connection between the two. *See Xin Liu*, 347 F.3d at 1137 (finding evidence of proximity in time between leave and adverse action circumstantially supports an FMLA claim).

Defendant urges reliance upon *Colburn v. Parker*, 429 F.3d 325, 327-29, 337-38 (1st Cir. 2005), where an employee took 25 days of FMLA leave over the course of four months and was terminated only two days after the last of those leave days. The First Circuit found no inference of retaliatory motive because he was not terminated until almost four months after first taking leave. *Id.* at 337-38. There are some parallels between *Colburn* and the instant case, as Plaintiff requested and was permitted to take FMLA leave for seven consecutive years. However, unlike in *Colburn*, this record indicates that Defendant expressed concern over Plaintiffs' "excessive absenteeism" during periods of time when Plaintiff <u>was</u> taking FMLA leave and terminated her for "excessive absenteeism" shortly after she again applied for and was granted permission to use FMLA leave. This provides additional circumstantial evidence in support of Plaintiff's claim. *See Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 170 (1st

---

[11] This is as convenient a place as any to address one of Plaintiff's more preposterous arguments, based in part upon this email from Debra Russell, an FMLA consultant, to Michelle Hanrahan. Plaintiff argues that Ms. Russell "observed" that Defendant's actions in connection with Plaintiff's discipline amounted to a "strategy to get a termination." (Doc. 45 at 11:5-6.) Plaintiff takes Ms. Russell's words out of context. In fact, Ms. Russell stated in her email that: "She needs to recognize that not addressing the attendance was not an oversight or a strategy to get to termination, which is the perception." (Pltf. Ex. C.) This is an obvious reference to an accusation made by Plaintiff, not an admission.

Cir. 1998) (finding temporal proximity between leave and warnings about "excessive absences" supported an inference of causation between FMLA leave and termination).

Although the Court believes the evidence supporting Plaintiff's claim to be thin, the evidence must be viewed in the light most favorable to Plaintiff on summary judgment, precluding judgment in favor of Defendant on this claim. Accordingly, Defendant's motion for summary judgment as to Plaintiff's FMLA claim is DENIED.

**D.     CFRA Claim.**

The Fifth Cause of action, which arises under California's counterpart to the FLMA, the Moore-Brown-Roberti Family Rights Act ("CFRA"), is based upon the same conduct that is alleged to have violated the FMLA. (FAC ¶¶ 83-89.) The "CFRA is substantially identical to the FMLA," and California courts routinely rely on federal cases when reviewing CFRA. *Boecken v. Gallo Glass Co.*, 2008 WL 4470759 (E.D. Cal. Sept. 30, 2008) aff'd in part, rev'd in part and remanded on other grounds, 412 F. App'x 985 (9th Cir. 2011). Defendants offer no independent grounds for summary adjudication of the CFRA claim. (Doc. 43 at 16-17.) Therefore, Defendant's motion for summary judgment as to the CFRA claim is DENIED.

**E.     Labor Code § 6310 Claim.**

Plaintiff alleges that Defendant retaliated against her in violation of California Labor Code ("CLC") § 6310 for "complain[ing] about workplace safety in the form of an employee treating patients while under the influence, and another employee making death threats against [Plaintiff's] supervisor…." (FAC ¶ 137.)

CLC § 6310 prohibits discharge or discrimination against an employee who "[m]ade any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative." CLC § 6310(a)(1). Subsection (b) prohibits retaliation:

> Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint to

13

> the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative, of unsafe working conditions, or work practices, in his or her employment or place of employment, or has participated in an employer-employee occupational health and safety committee, shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer….

CLC § 6310(b).

Analysis of a claim for retaliatory termination under California law follows a three-step approach. First, plaintiff must establish a prima facie case. If he succeeds, the burden shifts to defendant to establish a legitimate non-retaliatory reason for the adverse employment action. If defendant carries its burden, plaintiff must demonstrate that the stated reasons are merely pretext for retaliation. *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1042 (2005) (adopting *McDonnell Douglas* burden-shifting framework). Under this framework the plaintiff must first establish a prima facie case of retaliation. *Id*. If the plaintiff succeeds in doing so, the defendant may nevertheless prevail on summary judgment by providing legitimate, nonretaliatory explanation for its acts. *Id*. If defendant accomplishes this, the plaintiff may resist summary judgment either by showing that defendant's explanation is merely a pretext for unlawful retaliation. *Id*.; *Patten v. Grant Join Union High School Dist*., 134 Cal. App. 4th 1378, 1384 (2005) (applying this burden shifting approach to CLC § 1102.5 claim); *Raymonde v. Mirant California, LLC*, 2010 WL 366643 (N.D. Cal. Jan. 25, 2010) (applying same burden shifting approach to CLC § 6310 claim); *Fernandez v. Aware Products, Inc*., 2003 WL 550283 (Cal. Ct. App. Feb. 27, 2003) (same); *Hom v. Culinary Inst. of Am*., 2012 WL 1107797 (Cal. Ct. App. Apr. 3, 2012) (same).

### 1. **Prima Facie Case.**

"To establish a prima facie case of retaliation [under § 6310], a plaintiff must show that [1] [] she engaged in a protected activity, [2] that [] she was thereafter subjected to adverse employment action by [her] employer, and [3] there was a causal link between the two." *Muller v. Auto. Club of So. California*, 61 Cal. App. 4th 431, 451 (1998), disapproved on other grounds by *Colmenares v. Braemar Country Club, Inc*., 29 Cal. 4th 1019 (2003), superseded by statute on other grounds as recognized by *Bryan v. United Parcel Serv., Inc*., 307 F. Supp. 2d 1108, 1113 (N.D. Cal. 2004) (internal citation and quotation

omitted).

### a. **Protected Activity.**

Defendant concedes for purposes of this motion that Plaintiff's July 8, 2009 verbal report regarding Mr. Castillo constitutes a bona fide complaint regarding health or safety. (Doc. 43 at 15.)

Plaintiff also claims to have made a bona fide complaint about safety in the June 3, 2009 letter she sent to Ms. Castellanos regarding the co-worker who raised her voice toward Plaintiff and others in the workplace. (Def. Ex. J.) In this three-page "stream of consciousness," Plaintiff begins by complaining about her workload and that the computers were hard to boot up. (*Id*. at 1.) She then describes a meeting initiated by "Barbara" to "figure out what went wrong and how to avoid it in the future." (*Id*.) According to Plaintiff, another co-worker, Cherie, began to yell at Plaintiff during the meeting. (*Id*.) Plaintiff then discusses why Cherie may have been yelling at her and how that interaction made Plaintiff feel. (*Id*. at 1-2.) At one point, Plaintiff begins to list her own "perception of Cherie," because she believed she should "get the same chance" to "say my side of the drama and my perception of things." (*Id*. at 2.) Her long list of grievances about Cherie states:

> So my perception of Cherie
> If it matters
> Never here
> Always complaining of being sick to pts and staff
> Personal calls to her son through the day
> She is rude to pts ...
> She is loud in pt care areas
> She violates hipa daily
> Cranky with co workers and pts
> She has ½ docs (BUT DOES MORE THAN ANYONE)
> Gets special treatment
> And appears to be on drugs daily
> IT DOESN'T TAKE A GENIOUS [sic]
> TO FIGURE THAT OUT THE MOUTH THE SLURRING THE EYES AND MOOD CHANGES.

(*Id*.) Plaintiff then goes on to ask for "conflict resolution" because "things never get fixed by yelling [and] intimidation":

> We need some help
> Cherie and I
> I want to get along I want us to be professional

> I want to come to work and be treated fairly
> If someone has a problem with me
> I understand not everyone will like me
> But this is work and we have to try to work together
>
> If I just went by perception
> And told her what myself and others think I would get into trouble
> What will be done to her for yelling at me and others
> Or is this just more special treatment she can get away with
> And what does that say to the rest of the staff?

(*Id.* at 2-3.)

Defendants argue that the June 3, 2009 letter was not a bona fide complaint sufficient to trigger coverage under § 6310. Plaintiff claims that she "feared for her own personal safety" relative to this co-worker. (Doc. 45 at 19.) Even assuming this is the case, no such fear is expressed in her June 3, 2009 letter, which is purely an effort to document and support Plaintiff's own side in a workplace disagreement. Yet, where a § 6310 claim is based upon a written document, that document qualifies as a bona fide complaint if it can "reasonably be interpreted to address safety concerns." *Schulthies v. Nat'l Passenger R.R. Corp.*, 650 F. Supp. 2d 994, 1002 (N.D. Cal. 2009) (no bona fide complaint where worker complained that his employer's new work plan would cause service disruptions because such disruptions do not naturally imply an issue of safety to the public or to workers). Plaintiff's June 3, 2009 letter does state Plaintiff's belief that her co-worker was on drugs. Although she never expressed any indication that this implicated a safety concern, Defendant admits that the letter triggered an internal investigation of Plaintiff's allegation that her co-worker appeared impaired in the workplace. (JSF #4.) Although the investigation was ultimately dismissed as unsubstantiated because no one else corroborated Plaintiff's perception (Henderson Decl. ¶ 6), Plaintiff was disciplined for failing to raise this complaint through the proper channels (*id.* at ¶ 10). This disciplinary event was mentioned in Plaintiff's termination letter. (Def. Ex. R.)

Defendants cannot have it both ways. Although neither party addresses whether drug use by a co-worker implicates workplace safety for the purposes of § 6310, there is some authority suggesting that it does. *See Rivera v. Nat'l R.R. Passenger Corp.*, 2001 WL 533706, *3 (N.D. Cal. May 4, 2001),

aff'd in part, rev'd in part and remanded on other grounds, 340 F.3d 767 (9th Cir. 2003) (suggesting complaint about drug use in the workplace would trigger § 6310). Given Defendant's own response to Plaintiff's June 3, 2009 letter, a finder of fact could reasonably conclude that the letter qualified as a bona fide complaint about safety.

Defendant's summary judgment as to any claim based upon the June 3, 2009 is DENIED.

### b.   **Adverse Employment Action.**

Section 6310 protects employees who make bona fide complaints about workplace safety from being "discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment ...." CLC § 6310(b). There is no dispute that Plaintiff's termination on December 2 or 3, 2009 constituted an adverse employment action.

### c.   **Causal Connection.**

Defendant argues that there is no causal connection between Plaintiff's complaints about Cherie and Castillo and her termination because Plaintiff was terminated "because she engaged in unprofessional conduct in violation of TPMG's sexual harassment policy." (Doc. 43 at 16.) Defendant misunderstands the nature of proof required to demonstrate the prima facie element of causation. Plaintiff may establish causation by inference derived from circumstantial evidence, "such as the employer's knowledge that the employee engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." *Fisher v. San Pedro Peninsula Hospital,* 214 Cal. App. 3d. 590, 615 (1989) (internal citation and quotation omitted).

Plaintiff made her complaint about Cherie in early June 2009 and complained about Castillo in early July 2009. Plaintiff's complaint about Cherie led to an investigation into Plaintiff for violating the POR, while Plaintiff's complaint about Castillo led directly to an investigation into whether Plaintiff was sexually harassing Castillo and others. It is undisputed that both of the investigations that flowed from these complaints extended through the late fall of 2009. The Notice of Disciplinary Action for failure to follow the POR issued October 20, 2009. (Def. Ex. Q.) At the close of the sexual harassment investigation, it was recommended that Plaintiff attend Sexual Harassment training. This

recommendation was approved by management, and Plaintiff was issued a Notice of Disciplinary Action, final warning, on November 2, 2009. Defendant asserts it made the decision to terminate Plaintiff in late November 2009. (Def. Ex. U; Hanrahan Decl. ¶¶ 22-23.) For the purposes of summary judgment, Plaintiff has established a causal connection.

### 2. Legitimate Non-Discriminatory Reason.

Although Defendant nowhere uses the language of the *McDonnell Douglass* burden shifting approach, it plainly offers up what it believes to be a legitimate, non-discriminatory basis for Plaintiff's termination, namely "unsatisfactory overall work performance in accordance with TPMG's guidelines for progressive discipline." (Doc. 43 at 16.) Defendant cannot seem to make up its mind about whether her termination was for "excessive absenteeism" or was based upon a combination of attendance and other issues. This confusion is reflected in the termination notice, which focuses on absenteeism but mentions both the POR and sexual harassment discipline. (Def. Ex. R.) Critically, the document explaining the bases for Plaintiff's termination relies, at least in part, on the result of two investigations that flowed directly from conduct that must be assumed protected under § 6310 for purposes of summary judgment. Viewing the evidence in a light most favorable to Plaintiff, Defendant's explanation for the termination simply does not qualify as a "non-discriminatory basis."

Defendant's motion for summary judgment as to Plaintiff's CLC § 6310 claim is therefore DENIED.

### F. Wrongful Termination.

Defendant admits that Plaintiff's Fourteenth Cause of Action for wrongful termination is "tethered to" Plaintiff's CLC § 6310, FMLA, and CFRA claims. (Doc. 43 at 18-19.) Therefore, because those claims survive summary judgment, so too does Plaintiff's wrongful termination claim.

### G. Punitive Damages.

The FAC prays for punitive damages as to the Sixth, Sixteenth, and Seventeenth claims. Of these, only the Eleventh Claim (violation of CLC § 6310) remained at the time Defendant's motion for summary judgment was filed. (SUF #28.) Defendant moves for summary judgment on the ground that

Plaintiff has not demonstrated conduct of a malicious or oppressive nature required to sustain a claim for punitive damages.

Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Malice may be shown where the defendant exhibits "the motive and willingness to vex, harass, annoy, or injure," *Nolin v. Nat'l Convenience Stores, Inc.,* 95 Cal. App. 3d 279, 285 (1979) (internal quotation marks omitted), or a "conscious disregard of the rights and safety of others," *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 1000 (1993). A plaintiff may establish malice "by indirect evidence from which the jury may draw inferences." *Taylor v. Superior Court,* 24 Cal. 3d 890, 894 (1979).

Plaintiff does not oppose summary judgment as to punitive damages, and Defendant's position is solid. Therefore, Defendant's motion for summary judgment as to Plaintiff's punitive damages prayer in connection with her CLC § 6310 claim is GRANTED.

## V. CONCLUSION AND ORDER

For the reasons set forth above, Defendants' motion for summary judgment is:

(1) GRANTED as to Plaintiff's state law breach of contract, and NLRA claims, as well as to Plaintiff's prayer for punitive damages; and

(2) DENIED as to Plaintiff's FMLA, CFRA, CLC § 6310, and state law wrongful termination claims.

IT IS SO ORDERED.

Dated: **July 16, 2013**          **/s/ Lawrence J. O'Neill**
                                                              UNITED STATES DISTRICT JUDGE